**The STATE of Ohio, Appellant,**

**v.**

**STREET, Appellee.**

[Cite as *State v. Street* (1997), 122 Ohio App.3d 79.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 96CA006459.

Decided July 16, 1997.

*D. Chris Cook*, Lorain County Assistant Prosecuting Attorney, for appellant.
*Kenneth Lieux*, for appellee.

QUILLIN, Judge.

The state appeals from the judgment of the Lorain County Court of Common Pleas excluding the testimony of the alleged victim in this case due to incompetency. We affirm.

In August 1995, defendant-appellee Donald Street was indicted by the Lorain County Grand Jury on two counts of felonious sexual penetration. These acts were allegedly committed against Street's minor son, Kevin. In May 1996, the trial court conducted a competency hearing to determine if Kevin was qualified to testify as a witness against his father. Kevin was four years old at the time of this hearing, and the lower court found him incompetent. Having so found, the court further ruled inadmissible under Evid.R. 807 the testimony of other witnesses regarding statements Kevin had made to them.

Following this determination by the lower court, the state moved *in limine* to admit the statements Kevin had made as excited utterances. The court granted this motion in part, allowing Kevin's mother and grandfather each to testify as to one incident. The state brought this appeal under Crim.R. 12(J), raising three assignments of error.

"I. The trial court erred and abused its discretion in ruling that Kevin Street was incompetent to testify as a witness."

Under Evid.R. 601(A), a child under the age of ten is not automatically considered a competent witness to testify at trial. The court must make a specific finding as to the individual capabilities of the child involved. This determination can only be made through an in-person competency hearing. *State v. Said* (1994), 71 Ohio St.3d 473, 476, 644 N.E.2d 337. When making this determination, the trial court must take into consideration the following:

"(1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful." *State v. Frazier* (1991), 61 Ohio St.3d 247, 574 N.E.2d 483, syllabus.

A determination of competency is within the sound discretion of the trial court. *Id.* at 251, 574 N.E.2d at 486–487. A trial judge is far better situated than a reviewing court to gauge the competency of a child witness under the age of ten, *State v. Holt* (1969), 17 Ohio St.2d 81, 83, 246 N.E.2d 365, 366–367, and for that reason, the lower court's finding as to competency will not be disturbed absent an abuse of discretion. *State v. Gott* (Dec. 22, 1993), Lorain App. No. 93CA005560, unreported, 1993 WL 539595.

It is the last factor cited by *Frazier* above, the ability to appreciate the responsibility to be truthful, that primarily led the trial judge in this case to determine that Kevin was not a competent witness. Following are sample excerpts from the competency hearing:

"Q. * * * Do you think—that what do you think might happen if you didn't tell the truth?

"A. I don't know.

"Q. Do you think something good or something bad would happen if you didn't tell the truth?

"A. I don't know.

"Q. Did you talk to—well, Kevin, what do you think would happen to you at home if you told a lie and your mommy found out?

"A. I don't know.

"Q. Okay. Well, do you think your mommy would be happy that you lied or would she be mad that you lied?

"A. I don't know.

"Q. What?

"A. I don't know.

"Q. Do you think that if you lied at home that something good would happen because you lied, or something bad would happen to you because you lied?

"A. I don't know."

Later in the transcript, the child further testified:

"Q. * * * Do you think something good would happen to you if you lied to me today?

"A. No.

"Q. Do you think something bad would happen to you if you lied to me today?

"A. No.

"* * *

"Q. What do you think would happen to you if you fibbed, if you lied to Miss Denise?

"A. Nothing. Nothing would happen."

Following his personal interview with Kevin, the court stated:

"[T]he Court has not heard anything from Kevin which indicates to me that he has any appreciation for his responsibility to be truthful. That is, that there are any consequences for not being truthful.

"He certainly, during the initial examination of him, did not answer in a way that I felt revealed his appreciation for the need to be truthful. * * *

"* * *

"As a result thereof, the Court finds that Kevin Street is not competent to testify pursuant to Evidence Rule 601."

▆ The state argues that the court abused its discretion in the above decision. It points out that there were some basic facts which Kevin did recollect correctly and that at several points he did indicate an understanding that lying was bad. The state further appears to contend that the questions Kevin did not answer correctly were due, at least in part, to the court asking questions that were too advanced for him. In light of the above testimony and the lower court's superior vantage point, we cannot agree. We are unable to conclude that the lower court

abused its discretion in finding this child incompetent to testify. The state's first assignment of error is overruled.

"II. The trial court erred in ruling that admissibility of the child/victim's out-of-court statements was prohibited under the unavailability requirement of Evidence Rule 807(A)(2)."

Evid.R. 807 is a hearsay exception geared specifically toward situations such as this, where a child under twelve has allegedly been sexually or physically abused. The rule would allow certain out-of-court statements by the child to be admitted through the testimony of others when all of the following apply: (1) the totality of the circumstances surrounding the child's statements provides particularized guarantees of trustworthiness, (2) the child's testimony is not reasonably obtainable, (3) there is independent proof of the alleged act, and (4) proper notice is given that such testimony will be used. Evid.R. 807(A)(1)–(4). Evid.R. 807(B) goes on to specify the exclusive list of circumstances that will render a child's testimony "not reasonably obtainable."

The court in this case determined that Kevin's out-of-court statements could not qualify as hearsay exceptions under Evid.R. 807. Specifically, the court found that because Kevin was incompetent, his statements could provide no particularized guarantee of trustworthiness as required by Rule 807(A)(1). Also, because a child's incompetency is not specifically mentioned under Evid.R. 807(B) as reason to find that child's testimony "not reasonably obtainable," the court further found that Kevin's statements could not qualify as "not reasonably obtainable" under Rule 807(A)(2).

The state argues that both of these findings were in error. It contends that merely finding a child incompetent does not preclude the totality of the circumstances from indicating that, at the time a statement was made, it was trustworthy. The state also argues that when a child is prevented from testifying due to incompetency, certainly that child's testimony becomes "not reasonably obtainable."

There is logic to the state's arguments and, in fact, there has been some disagreement among Ohio appellate courts. See, e.g., *State v. Cardosi* (1997), 122 Ohio App.3d 70, 701 N.E.2d 44 (Second District Court of Appeals held that incompetence rendered testimony unavailable), *State v. Rogers* (Dec. 9, 1993), Cuyahoga App. No. 63979, unreported, 1993 WL 515635 (Eighth District Court of Appeals held that an unavailable witness included an incompetent one), *State v. Black* (1993), 87 Ohio App.3d 724, 728, 622 N.E.2d 1166 (Fourth District Court of Appeals held that incompetency was not a basis for finding testimony unobtainable), *State v. Celestino* (Mar. 19, 1993), Sandusky App. No. S–91–50, unreported, 1993 WL 77002 (Sixth District Court of Appeals held that incompetency did not

mean testimony was unavailable). We believe, however, that the Ohio Supreme Court has provided closure in this area.

In *State v. Said* (1994), 71 Ohio St.3d 473, 644 N.E.2d 337, the Ohio Supreme Court determined that before a statement can be admitted as a hearsay exception, it "must meet the same basic requirements for admissibility as live witness testimony." *Id.* at 475, 644 N.E.2d at 340. Under Evid.R. 601, live witness testimony may only be admitted only if the witness is competent. The court concluded, "Thus, a trial court must find that a declarant under the age of ten was competent at the time she made the statement in order to admit that statement under Evid.R. 807." *Id.* at 477, 644 N.E.2d at 341.

 In this case, the lower court found Kevin incompetent to testify as a witness. The judge was not specific in finding Kevin incompetent at the time he made the statements in question. While the better practice is for the judge to clearly relate the incompetency to the time the statements were made, we find it a harmless omission in this limited circumstance. At the time of the hearing, Kevin was only four years old. The incompetency the judge noted was directly related to Kevin's minority, primarily his inability to understand the consequences of telling lies. We find it unreasonable to presume that Kevin might have been *more* competent at an earlier age, such as when the statements in question were made.

Because the court found Kevin's tender age to render him incompetent, *Said* mandates the further conclusion that any earlier statements he made were inadmissible under Evid.R. 807. The state's second assignment of error is overruled.

III. The trial court erred in denying the state's motion in limine and refusing to admit excited utterances made by Kevin to his mother, grandfather, counsellor and Sergeant Mahar.

With Kevin's out-of-court statements having been disqualified by the court under Evid.R. 807, the state moved *in limine* to have them admitted as excited utterances under Evid.R. 803(2). The state was attempting to admit statements made by Kevin to his mother, his grandfather, his counselor, and a detective from the Lorain County Sheriff's Department. A hearing on this matter immediately ensued and resulted in the court granting the state's motion in part. The court determined that one statement Kevin made to his mother and one that he made to his grandfather were both admissible as excited utterances. All others were excluded.

 We note, first of all, that while *State v. Said* held that a child must be found competent at the time a statement is made before the statement can qualify under any hearsay exception, the court excepted excited utterances from

this general rule. *Said, supra,* 71 Ohio St.3d at 477, 644 N.E.2d at 341, fn. 1. It was, therefore, appropriate for the court to consider Kevin's prior comments under this exception, even though Kevin was found to be incompetent. Contra *State v. Ungerer* (June 5, 1996), Ashland App. No. 95COA1125, unreported, 1996 WL 362804.

An excited utterance is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). The state contends that the circumstances surrounding each disclosure by Kevin suggest that he was still under the stress of the alleged sexual abuse. In making this argument, the state focuses on the recent trend for courts to rely more on "indicia of reliability," rather than contemporaneousness with the event, when dealing with very young children.

■■ This court has previously recognized and followed the trend to which the state refers. See *State v. Gott* (Dec. 22, 1993), Lorain App. No. 93CA005560, unreported, 1993 WL 539595. The reasoning behind it is that children are likely to remain in a state of nervous excitement longer than would adults, and they are less capable of engaging in the reflective thought that the excited utterance exception seeks to avoid. *State v. Taylor* (1993), 66 Ohio St.3d 295, 304, 612 N.E.2d 316, 323. For these reasons, courts have considered the passage of time between the upsetting event and the disclosure relating to it less indicative of the presence or absence of stress where young children are involved. This does not mean, however, that the exception should swallow the rule. The dispositive inquiry is still whether the declarant remains under the stress of nervous excitement at the time the disclosure is made. *State v. Boston* (1989), 46 Ohio St.3d 108, 118, 545 N.E.2d 1220, 1230–1231.

Kevin's first disclosure to his mother, Margaret, occurred in June 1995, when Kevin walked into the bathroom where Margaret was, stepped into the bathtub, closed the shower curtain between them and said, "Daddy hurt my dupa. He put his finger in my dupa and his fingernail hurt me." Margaret testified that when Kevin finally came out of the tub, he acted quiet and ashamed and said he was bad. The state also sought to admit a later comment where, in response to Margaret's question "Where was mom?" when Kevin was hurt, Kevin replied that she was at school and, on another occasion, mowing the grass. She testified that Kevin again was acting quiet, but not as quiet as before.

Kevin also made several statements to his grandfather, Jimmy Hackney. The first was in May 1995, following a two-and-one-half-hour visit between Street and Kevin which occurred in Hackney's home. (Kevin's parents were separated in January 1994, and from that date until late August 1995, Street was only allowed to visit Kevin with some, though not total, supervision.) Hackney testified that after Street left the house, Kevin said, "Don't ever have daddy at this house

again." When asked why, Kevin said it was because he was afraid of him. Hackney testified that when Kevin made this disclosure, he was "scared to death." Kevin made further comments to Hackney in November 1995 such as "[daddy] lays on top of me" and "daddy stinks." These comments came two to three months after Street's last possible visit with Kevin, as Street was allowed no further visitation following his August 1995 indictment.

Kevin began seeing a counselor, Fannie Baxter, for behavioral problems in February 1995. After Kevin's first disclosure to Margaret in June 1995, Margaret made an emergency call to Baxter saying Kevin needed to speak to her. When brought to Baxter's office, Baxter asked, "Kevin, your mom says that you have something to tell me," and at that point Kevin said, "Daddy touched my butt, Miss Baxter." Baxter's records did not reflect that Kevin appeared to be anxious or stressed at this visit. Later, in April 1996, Kevin also said to Baxter, "Daddy touched my pee-pee." This was approximately eight months after Kevin's last possible visit with Street.

Finally, as a result of the disclosure Kevin made to Baxter, Sergeant Tim Mahar from the Lorain County Sheriff's Department became involved. An interview was scheduled for June 15, 1995, wherein Kevin was shown anatomically correct drawings and asked to identify various body parts. Kevin identified the buttock area as the "dupa." He was then asked, "Did anybody ever hurt your dupa?" and Kevin said yes, his daddy had. Kevin was described as quiet throughout this interview, and clinging to his mother.

After all the above testimony was heard, the lower court ruled that the disclosure to Margaret from the bathtub and the disclosure to Hackney following Street's visit qualified as excited utterances and would be admitted. The rest would be excluded.

■ The task of determining excited utterances in this case was made significantly more difficult due to the lack of evidence concerning when, exactly, the alleged incidents took place. However, we find nothing unreasonable in the lower court's decision. The statements excluded from evidence included those that were made months after the last possible incident could have occurred, and those that were prompted by direct questioning and/or anatomically correct drawings. See *State v. Ulis* (1993), 91 Ohio App.3d 656, 663, 633 N.E.2d 562, 566–567, reversed on other grounds (1992), 65 Ohio St.3d 83, 600 N.E.2d 1040 (upholding decision that child's statements were not excited utterances when made after the stimulus of photographs and closed-end questions). While Kevin may have appeared unusually quiet or clingy during these episodes, merely being upset is not adequate under Evid.R. 803(2). *Taylor, supra,* at 66 Ohio St.3d 303, 612 N.E.2d at 322. Again, the threshold question is whether Kevin made his

declarations while still under the nervous excitement of the alleged incident. *Id.* at 300–301, 612 N.E.2d at 320–321.

The trial judge necessarily had to determine certain questions of fact in making his ruling. If his decision on these questions of fact, as reflected in his ruling, were reasonable, it is not for this court to disturb them. *Id.* at 304–305, 612 N.E.2d 316. A trial court is considered to occupy a superior vantage point in the determination of whether evidence should be admitted or excluded, and, for this reason, it is granted broad discretion of which there must be clear abuse before we will reverse. *State v. Brumback* (1996), 109 Ohio App.3d 65, 77, 671 N.E.2d 1064. We find nothing unreasonable or clearly abusive in the lower court's decision in this case. The state's third assignment of error is overruled, and the judgment of the lower court is affirmed.

*Judgment affirmed.*

DICKINSON, P.J., concurs.

BAIRD, J., concurs in judgment only.