OPINION
Appellant, Sean P. Ashford, brings this appeal from a judgment of the Trumbull County Court of Common Pleas finding him guilty of two counts of rape and one count of attempted rape following a jury trial.
In March 1998, appellant took up temporary residence with Nancy Zahniser ("Zahniser") and her three children including D.G. who was four years old at the time. Prior to moving in with Zahniser's family, appellant also resided with Greta Kovach ("Kovach"), who is the mother of then eight year old J.G. Appellant had the opportunity to baby-sit both D.G. and J.G.
The Trumbull County Grand Jury indicted appellant on one count of gross sexual imposition, in violation of R.C. 2907.05(A)(4); one count of attempted rape with a violent sexual predator specification, in violation of R.C. 2923.02, 2907.02(A)(1)(b)(2) and 2941.148; and three counts of rape with a violent sexual predator specification, in violation of R.C.2907.02(A)(1)(b)(2) and 2941.148. Appellant entered a plea of not guilty.
On May 21, 1998, the trial court held a hearing in response to appellant's motion to suppress all the statements made by him to the police. In a judgment entry issued on June 4, 1998, the court denied this motion. Appellant also filed a motion to determine his competency to stand trial. A competency hearing was held on August 26, 1998, and the court determined appellant was, in fact, competent to stand trial.
As the state was preparing to go to trial, the court conducted an incamera examination of D.G. and J.G. to determine whether they were competent to testify, as both children were below the age of ten. The court found J.G. was competent to testify while D.G. was found incompetent to testify.[1]
During the trial, the court, at the request of the state, dismissed the charge for gross sexual imposition and one count of rape, but proceeded with the three remaining charges. On December 11, 1998, the jury returned a guilty verdict for the two counts of rape and one count of attempted rape. Appellant was sentenced to two consecutive life sentences for each count of rape to run consecutively with each other, and eight years for the attempted rape to be served concurrent with the rape counts.
Appellant now appeals this judgment, asserting four assignments of error for our review:
 "[1.] The trial court erred by failing to suppress the appellant's confession.
 "[2.] The trial court erred by admitting hearsay testimony of a witness who was found incompetent to testify, and thereby violated the appellant's Sixth and Fourteenth Amendment rights to confront the witnesses against him as guaranteed by the United States Constitution, as well as Article I Section 10 of the Constitution of the State of Ohio and the rules of evidence.
 "[3.] The trial court erred by allowing the state to impeach its own witness over the objections of the appellant.
 "[4.] The appellant's convictions for rape and attempted rape are against the manifest weight of the evidence."
Under the first assignment of error, appellant seems to be challenging the trial court's decision to deny his motion to suppress the written and videotaped confessions. The crux of the argument is that his confession was given in response to unconditional promises of "help" made by the interrogating officer. According to appellant, during the interview and questioning, there were never any conditions placed on the promises of help made to him other than his confessing to the charges.
In a hearing on a motion to suppress, the trial court assumes the role of the trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366; State v. Fanning (1982), 1 Ohio St.3d 19, 20. Thus, the credibility of witnesses during a motion to suppress hearing is a matter for the trial court, and a reviewing court should not disturb the trial court's findings on the issue of credibility. Fanning at 20. Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.State v. Guysinger (1993), 86 Ohio App.3d 592, 594. Accepting these facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the appropriate legal standard. State v. Klein (1991), 73 Ohio App.3d 486,488.
It is well known that a suspect's waiver of his rights and his subsequent confession must be made voluntarily, knowingly and intelligently. Miranda v. Arizona (1966), 384 U.S. 436. "A suspect's decision to waive his Fifth Amendment privilege is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct. * * * Thus, coercive police activity is a necessary predicate to finding that a confession is not voluntary within the Fifth Amendment, on which Miranda was based." (Citations omitted.) State v. Dailey (1990),53 Ohio St.3d 88, 91-92.
To determine voluntariness, the court should consider the totality ofthe circumstances, including the age, mentality, prior criminal experience of the defendant, the length, intensity, and frequency of the interrogation, and the existence of physical deprivation or mistreatment, or the existence of any threat or inducement. State v.Brewer (1990), 48 Ohio St.3d 50.
"[A] confession `must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, howeverslight, nor by the exertion of any improper influence.'" (Emphasis sic.) State v. Arrington (1984), 14 Ohio App.3d 111, 114, quoting United Statesv. Tingle (C.A.9, 1981), 658 F.2d 1332, 1335-1336. If "`the defendant isgiven to understand that he might reasonably expect benefits in thenature of more lenient treatment at the hands of the police, prosecutionor court in consideration of making a statement, even a truthful one,such motivation is deemed to render the statement involuntary andinadmissible. The offer or promise of such benefit need not be expressed, but may be implied from equivocal language not otherwise made clear.'" (Emphasis in the original.) Arrington at 115, quoting Peoplev. Flores (1983), 144 Cal.App.3d 459, 469.
Admonitions to tell the truth made by police officers are considered neither threats nor promises, and are permissible. State v. Loza (1994),71 Ohio St.3d 61, 67; State v. Cooey (1989), 46 Ohio St.3d 20, 28. Promises that a defendant's cooperation will be considered or that a confession will be helpful do not invalidate an otherwise legal confession. Loza at 67. Further, the Supreme Court of Ohio has determined that a confession was voluntary even though the police offered "help" to the defendant if he confessed. State v. Chase (1978), 55 Ohio St.2d 237
. See, also, State v. Wilson (1996), 117 Ohio App.3d 290, 294.
In the case at bar, before the interrogation began, appellant waived his Miranda rights three separate times and signed three separate waiver of rights forms. A review of the videotaped interviews, which included the waivers of Miranda rights and two confessions, exhibit no signs of police coercion, threats, mistreatment or physical deprivation. Upon completion of each interrogation, when the officer asked appellant if he felt threatened or if any promises were made to him, he replied "no."
While appellant alludes to the fact that he has a learning disability and an I.Q. of eighty-one, a low mental aptitude of the interrogee is not enough to show evidence of overreaching. State v. Hill (1992),64 Ohio St.3d 313, 318. Furthermore, a review of the videotapes show that appellant did not appear to have difficulty reading or understanding the waiver of rights form as he indicated numerous times he understood he had a right to an attorney, a right not to talk to the police officer, and by signing the form, he was waiving these rights.
More importantly, the interrogating officer never stepped over the line in that he never made an improper promise of help to appellant in exchange for a confession. During the interrogation, the officer mentioned that they would try to get appellant help. The officer, however, explained to appellant that if he was found guilty, he wouldstill go to prison, and that while in prison, there were different programs that could provide help to him. Thus, the clear implication was that treatment was the "help" which would be available to appellant in prison.
It is our determination that the prohibited "help" which was enumerated in Chase, Arrington, and Wilson, referred to a police promise of an exchange of treatment in lieu of imprisonment. Here, the offer of "help" was clearly not in reference to an elimination or reduction of a prison sentence; rather, the reference was to the availability of treatment programs during incarceration.
Under these facts, we determine that the interrogation tactics used by the police officer, even in light of appellant's mental capacity, did not render appellant's statements involuntary. Any reference made by the police officer to help in the form of treatment available in prison was not improper. Considering the totality of the circumstances, we conclude that there was never any promise of impermissible help which would render the confession involuntary. Thus, appellant's written and videotaped confessions were properly admitted by the trial court, and the first assignment of error lacks merit.
Under the second assignment of error, appellant alleges that he was denied constitutional protections when the trial court permitted the admission of hearsay testimony which related to the utterances made by D.G. who was found incompetent to testify.
A trial court has broad discretion to rule on evidentiary matters and will not be reversed on appeal unless the trial court so abused its discretion to the prejudice of the defendant. State v. Theuring (1988),46 Ohio App.3d 152, 155.
Appellant first challenges the testimony of Sharon Gurney ("Gurney"), a friend of D.G.'s family, on the basis that it did not satisfy Evid.R. 807(A)(1) or 803(2).[2] Although appellant has not directed our attention to the precise statement made by Gurney that he takes issue with, he seems to be challenging the following testimony:
 "Q. [by the prosecuting attorney] Was there a time when [D.G.] told you that part of her hurt?
 "A. [by Gurney] Yeah. The first time [March 20, 1998] I was taking a bath and she came in and said Sean hurt her butt, but I just thought he smacked her butt or something, and then I was washing my hair or something and she just went out.
"Q. Okay.
 "A. And then the second time, either that night [March 20, 1998] or the night after [March 21, 1998], she came in and said Sean hurt her butt and I was like, `What do you mean he hurt it,' because it was the second time she told me. She was like, `He stuck something up it.' I was like, `What do you mean he stuck something up it?' She was like, `His thing,' and I was like, `What? What thing?' And she pointed down to her genital area and I was like, I was like, `No, he didn't, [D.G.],' you know, trying to deny it. I didn't want to think that really happened to her. And then she started crying, `Yes, he did. Yes, he did,' and then I called Nancy in."
Evid.R. 807 recognizes a hearsay exception for the statements of children under the age of twelve relating to sexual abuse or physical violence and establishes four requirements for admission: (1) the statement must be trustworthy; (2) the child's testimony must be unavailable; (3) independent proof of the act must exist; and (4) the proponent must notify all other parties ten days before trial that such a statement will be offered in evidence. The Supreme Court of Ohio has determined "a trial court must find that a declarant under the age of ten was competent at the time she made the statement in order to admit that statement under Evid.R. 807." State v. Said (1994), 71 Ohio St.3d 473, 477. Thus, a finding of incompetence mandates the exclusion of the out-of-court statements offered under Evid.R. 807. Akron v. Deem (1999),135 Ohio App.3d 523, 526; State v. Street (1997), 122 Ohio App.3d 79,85;
A case on point is Street, wherein the Ninth Appellate District determined that the hearsay testimony with respect to statements made by a four year old victim was properly excluded notwithstanding Evid.R. 807 because the trial court had previously determined that the child was incompetent to testify. Although it was not specified whether the finding of incompetency pertained to the child's condition at the time of the hearing or when the statements were originally made, the court noted that it was "unreasonable to presume that [the child] might have been more
competent at an earlier age, such as when the statements in question were made." (Emphasis in the original.) Street at 85.
Similarly, in this case, the trial court did not specify whether the finding of incompetency referred to D.G.'s mental state at the time of the in camera examination or when the statements were actually made. Thus, absent an exception, Gurney's testimony would be inadmissible as a determination of incompetence would require the exclusion of the hearsay statement offered under Evid.R. 807(A). However, in Said, the Supreme Court of Ohio excepted excited utterances from this general rule of exclusion. Said at 477, fn. 1. See, also, State v. Boston (1989),46 Ohio St.3d 108, 114, fn. 1.
Evid.R. 803(2) defines an "excited utterance" as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." In determining whether a statement qualifies as an excited utterance, the court should consider "(1) the lapse of time between the event and the statement, (2) the mental and physical condition of the declarant, (3) the nature of the statement, and (4) the influence of intervening circumstances." State v. Humphries (1992), 79 Ohio App.3d 589, 598. Merely being upset does not meet the standard for admissibility under excited utterance. State v. Taylor (1993), 66 Ohio St.3d 295, 303.
Neither is time the controlling factor in determining whether a statement fits within the excited utterance exception. Humphries at 598. "The controlling factor is whether the declaration was made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection." Id. at 598.
We acknowledge that other Ohio courts have determined that children are likely to remain in a state of nervous excitement longer than would adults, and they are less capable of engaging in the reflective thought that the excited utterance exceptions seeks to avoid. Street at 86;Humphries at 598; State v. Wagner (1986), 30 Ohio App.3d 261, 263-264;State v. Weigand (Nov. 17, 1995), Lake App. No. 94-L-166, unreported, at 2, 1995 WL 803620.
The Eight Appellate District had this to say with respect to excited utterances:
 "Related to the notion of a wide discretion in appellate review is a clear judicial trend to liberalize the requirements for an excited utterance when applied to young children victimized by sexual assaults. [Citations omitted.] The significance and trustworthiness of an excited utterance lies in the fact the words are uttered while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance. [Citation omitted.] The limited reflective powers of a three-year-old, coupled with his inability to understand the enormity of ramifications of the attack upon him, sustain the trustworthiness of his communications. As a three-year-old, truly in the age of innocence, he lacked the motive or reflective capacities to prevaricate the circumstances of the attack." (Emphasis added.) Wagner at 263-264.
However, we would respectfully observe that young children can also be significantly more subject to suggestion than adults, and, as a result, can be much more likely to say what they think they are expected to say in order to avoid punishment.
This court takes the unpopular position that hearsay allegations of child molestation must be regarded very cautiously. The reason is simple. They are almost impossible to defend against. The common scenario is one in which there is no witness beyond the accused and the victim. The victim is incompetent and not subject to direct or cross-examination. There is no definitive physical evidence of the sexual act or conduct itself; and, there is a substantial lapse of time between the act and its discovery. Hence, the trial court must be extraordinarily cautious in determining "whether the declarant remain[ed] under the stress of nervous excitement at the time the disclosure is made." Street
at 86. Put another way, was there any opportunity or motive by the surrounding adults or circumstances to contaminate or influence the child's recollection?
In the instant matter, the admissibility of then four year old D.G.'s statements to Gurney was dependent on the court finding that the child was still under the stress of the startling occurrence. Being mindful of this, we will consider when and how the statements were allegedly made to Gurney.
The offenses against D.G. took place on March 19, 1998. The first disclosure by the child to Gurney occurred on March 20, 1998, when the child walked into the bathroom where Gurney was and spontaneously announced appellant hurt her butt. Gurney indicated she failed to recognize the sexual implication of the child's statement. The second disclosure took place either that same night or on March 21, 1998. At that time, the child told Gurney that appellant hurt her butt and stuck something up it. Moreover, during the second disclosure, the child was crying and visibly upset.
There was no suggestion that the child had been coached or subject to other influence in any way. Further, there was no suggestion that Gurney had any motive or reason to lie about the incident. Considering the nature of the assault and the age of the declarant, it was reasonable to find that, even several days later, the four year old child was still in a state of spontaneous excitement at the time of her statements to Gurney. Hence, D.G.'s statements were admissible as an excited utterance under Evid.R. 803(2). See State v. Chappell (1994), 97 Ohio App.3d 515,521-528 (holding that nine year old alleged rape victim's statement thirty-two hours after the rape was properly admitted as an excited utterance); State v. Fox (1990), 66 Ohio App.3d 481, 488-490 (holding that seven year old child's statements one day after alleged rape were properly admitted as an excited utterance); Weigand at 2-3 (holding that six year old victim's statements made less than twenty-four and forty-eight hours after a sexual assault were properly admitted as an excited utterance).
Accordingly, the trial court did not abuse its discretion in determining under the facts and circumstances in the instant action, that the statements made by the four year old victim to Gurney twenty-four and possibly forty-eight hours after the sexual assaults, were excited utterances.
Next, we consider appellant's contention that Nan Pretot ("Pretot") and Dr. Gary Joseph's ("Dr. Joseph") statements did not fall within any hearsay exception and were inadmissible because the declarant, D.G., was deemed to be incompetent to testify at trial.
The record reflects that appellant failed to object at trial to the admissibility of this testimony. Thus, any error was waived, save plain error. Crim.R. 52(B). Plain error does not exist unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise. State v. Moreland (1990), 50 Ohio St.3d 58, 62; State v. Long
(1978), 53 Ohio St.2d 91, paragraph two of the syllabus. "Notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."Long at paragraph three of the syllabus.
Medical records admitted into evidence at trial indicated that D.G. was brought to St. Joseph's Medical Center just after midnight on March 22, 1998. Pretot, a nurse, and Dr. Joseph, D.G.'s emergency room attending physician, both took a medical history of the child.[3] While Pretot was present, Dr. Joseph performed a physical exam on the child and prepared a written diagnosis.
Appellant takes issue with the following excerpt from the testimony of Pretot:
 "Q. [by the prosecutor] As part of the [medical] history that you take do you ask her [victim] what had happened to her?
"A. Yes, I do.
"Q. What did she indicate to you?
"A. Specifically?
"Q. Yes.
 "A. When I asked her she said that `he' and gave me a first name Sean, put lotion down there.
"Q. What do you mean when you say down there?
 "A. In the private area, she pointed down to the private area. And then he put his thing down there."
Appellant also maintains that the trial court improperly allowed Dr. Joseph to testify as to statements made to him by the child:
 "Q. [by prosecutor] Okay. Did [D.G.] indicate to you how this trauma had occurred?
"A. Yes, she did.
"Q. What did she tell you?
 "A. She stated that Sean, that's the name she used, she didn't give me a last name, had placed his — well, what she said was, `He put his thingy in my butt' She stated that he had rubbed her with some lotion in her vaginal and anal area, in her private areas, that's what she stated, and then placed his penis in her butt."[4]
Evid.R. 803(4), the medical exception to the hearsay rule, reads as follows:
 "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."[5]
 "The cornerstone of admissibility under Evid.R. 803(4) is whether the statements are reasonably pertinent to diagnosis or treatment." State v. Miller (1988), 43 Ohio App.3d 44, paragraph two of the syllabus. A child's statements relating to medical diagnosis or treatment are not automatically untrustworthy simply because the child was not personally motivated to seek care, but rather was directed to treatment by an adult. State v. Dever (1992), 64 Ohio St.3d 401, 409-410. See, also, Jett at 12-13.
Further, several Ohio courts have held that hearsay statements of a child made for the purposes of medical diagnosis or treatment are admissible under Evid.R. 803(4) regardless of the competency of the child. State v. Ulis (1993), 91 Ohio App.3d 656, 665; Miller at paragraph one of the syllabus; State v. Wilson (Feb. 18, 2000), Adams App. No. 99CA672, unreported, at 7, 2000 WL 228242; State v. McWhite (Dec. 29, 1995), Lucas App. No. L-95-007, unreported, at 4, 1995 WL 763898.
In the case at bar, both the nurse and doctor's testimony regarding the majority of the child's out-of-court statements meet the criteria for trustworthiness. The record is devoid of any evidence which would indicate that the child had any ulterior motivation at the time she spoke with Pretot and Dr. Joseph.
This court has held that a statement as to the identity of the perpetrator of a criminal act, which is not reasonably related or necessary to medical diagnosis, is not admissible under Evid.R. 803(4).State v. Henderson (Aug. 20, 1999), Trumbull App. Nos. 98-T-0039, 98-T-0040, and 98-T-0041, unreported, at 2-3, 1999 WL 689736; State v.Zembower, (Mar. 27, 1998), Lake App. No. 96-L-184, unreported, at 4, 1998 WL 156858; State v. Conway (June 20, 1997), Lake App. No. 95-L-040, unreported, at 6, 1997 WL 361694.
Similarly, the Supreme Court of Ohio had this to say about the admissibility of the abuser's identity under Evid.R. 803(4):
 "[S]tatements made by a child during a medical examination identifying the perpetrator of sexual abuse, if made for purpose of diagnosis and treatment, are admissible pursuant to Evid.R. 803(4), when such statements are made for the purposes enumerated in that rule. This means that a child's statement identifying his or her abuser should be treated the same as any other statement which is made for the purposes set forth in Evid.R. 803(4)." (Emphasis added.) Dever at 414.
The identity of the abuser in this case could have been considered necessary for psychological diagnosis and treatment as the treatment may involve the removal of the child from the situation. Miller at 47. See, also, Wilson, 2000 WL 228242, at 8.[6] "[S]tatements by a child abusevictim that the abuser is a member of the victim's household are reasonably pertinent to diagnosis and treatment." (Emphasis added.)Wilson, 2000 WL 228242, at 8. This rationale would have been applicable to the case at bar as appellant was a member of the child's household. In fact, the patient discharge report, admitted without objection into evidence as State's Exhibit 2, recommended as a follow-up plan that the child be removed from the dangerous, harmful environment. Nevertheless, a foundation needs to be laid to qualify the admission of this very prejudicial information into the record.
Because the child's statements could have been made for purposes of medical diagnosis or treatment, the trial court did not commit plain error in finding the testimony of Pretot and Dr. Joseph admissible pursuant to Evid.R. 803(4). Appellant's second assignment of error is not well-taken.
In appellant's third assignment of error, he maintains the trial court committed reversible error by permitting the state to impeach its own witness, J.G., through the use of a prior inconsistent statement over the objections of appellant's counsel.
At trial on direct examination, the nine year old J.G., testified concerning the charge of rape and attempted rape wherein she told the jury how appellant tried to touch, what she referred to as, her butt with his fingers. On direct, the child was unable to remember everything that happened to her, and as a result, the state sought to refresh her memory with the statement she provided to the Trumbull County Children's Services. After being permitted to review her written statement, the child testified that appellant tried to sniff, touch, and put his tongue in her genital.[7]
During cross-examination, however, the child recanted her statement by stating that appellant never touched her genital. On redirect examination, the state attempted to rehabilitate, not impeach, the child witness. When the prosecutor asked the child about her claim that appellant put his tongue in her genital, the child recanted this statement as well.
Under these circumstances, we determine that the state was not, in fact, attempting to impeach its own witness. Rather, the state was seeking to clarify the child's testimony. Ultimately, this failure to provide evidence as to an element of the charge of rape resulted in its subsequent dismissal. Accordingly, appellant's third assignment of error is without merit.
In his final assignment of error, appellant asserts that his convictions on rape and attempted rape are against the manifest weight of the evidence. He argues that the only evidence indicating he perpetrated the alleged crimes was a confession made under the auspices of counseling, hearsay testimony, or testimony by a victim who later recanted her own testimony.
When reviewing a claim that the judgment was against the manifest weight of the evidence, we must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, State v. Thompkins (1997),78 Ohio St.3d 380, 387; State v. Duong (Dec. 11, 1998), Trumbull App. No. 98-T-0026, unreported, at 4, 1998 Ohio App. LEXIS 5999; State v.Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, at 16, 1994 Ohio App. LEXIS 5862.
"[T]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins at 390 (Cook, J. concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
The evidence supporting appellant's conviction on the two counts of rape is significant. Both Dr. Joseph and Pretot, the child's emergency-room attending physician and nurse, provided unbiased testimony that D.G. told them appellant caused her injuries. This account was repeated in the testimony of Gurney, a family friend. Further, physical evidence was described by Dr. Joseph concerning the child's swollen and chaffed vaginal and perianal areas. Pretot also provided supporting testimony that the rectal area was reddened, swollen and excoriated. Dr. Joseph also determined that the child's injuries occurred recently, were caused by blunt trauma to her anus and rectum, and could have been caused by an erect adult penis. The forensic scientist from the Bureau of Criminal Identification and Investigation testified that small amounts of semen were found on the child's underwear. However, there was an insufficient amount of sperm to conduct a DNA test. Moreover, appellant admitted in a written and videotaped corroborating statement to raping the child twice in one day.
Our review of the record leads us to conclude that the jury reached the correct result and clearly did not lose its way in finding appellant guilty. Accordingly, appellant's convictions concerning the two charges of rape of D.G. are not against the manifest weight of the evidence.
With respect to the attempted rape charge of J.G., appellant confessed that while on the couch with J.G. on his lap, he rubbed his penis between her butt cheeks. He admitted trying to slide his penis into the child's butt, but was interrupted when her brother entered the room. At trial, J.G. failed to corroborate that account and could not remember everything that happened. However, the child did testify that when she was in the bathroom, appellant attempted to pull her pants down and put his fingers up her butt. The child also described an incident occurring either in the bathroom, living room, or bedroom wherein appellant pulled his pants down and laid her on her bed. No other evidence was presented to support the attempted rape charge.[8]
Questions regarding the credibility of witnesses are matters left to the trier of fact. DeHass at paragraph two of the syllabus. Although J.G. did not testify to exactly the same events as appellant confessed to, she confirmed that appellant had babysat her and identified him as the perpetrator of an incident of attempted sexual conduct. Even though there is confusion as to when and where the attempted rape occurred, J.G.'s testimony corroborated that some type of sexual conduct was attempted by appellant against her. Further, J.G. only recanted her statement with respect to the rape charge and not the attempted rape charge.
Under these circumstances, we cannot conclude that the jury lost its way or created such a manifest miscarriage of justice that appellant's conviction must be reversed and a new trial ordered. Appellant's conviction of attempted rape against J.G. is not against the manifest weight of the evidence, and the final assignment of error has no merit.
Based on the foregoing analysis, appellant's assignments of error are not well-taken, and the judgment of trial court is hereby affirmed.
 _______________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J., NADER, J., concur.
[1] At the time of the trial, J.G. was nine years old and D.G. was five years old.
[2] Although appellant objected to Gurney's testimony only after a number of other witnesses had testified, this was sufficient enough to preserve the issue for appellate review. Thus, we will consider this challenge under a simple error analysis.
[3] It was Pretot's duty as a triage nurse to take a history of an incoming emergency room patient in connection with the emergency room physician's examination.
[4] In their testimony, both Pretot and Dr. Joseph state that D.J. identified the perpetrator as being "Sean." However, a review of the transcript reveals that the state failed to lay a proper foundation with respect to this testimony in that the state failed to ask whether hospital protocol required the attending nurse or physician to ask the child "who did this?" Nevertheless, this testimony would have been admissible if a proper foundation would have been laid, and thus does not rise to the level of plain error. Even if we considered this under a simple error analysis, admission of this testimony would, at worst, amount to harmless error.
[5] Evid.R. 803(4) does not require that the declaration be made to a physician. A statement may fit within the medical treatment exception to the hearsay rule even if it is directed to other physical and mental health professionals including nurses, psychologists, and therapists.Chappell at 530; In re Dustin (Sept. 30, 1999), Lake App. No. 98-L-034, unreported, at 5, 1999 WL 956880; State v. Jett (Mar. 31, 1998), Portage App. No. 97-P-0023, unreported, at 13, 1998 WL 258166. We also note that a nurse is not qualified to make a medical diagnosis. Berdyck v. Shinde
(1993), 66 Ohio St.3d 573, paragraph one of the syllabus; Marr v. MercyHosp. (May 22, 1998), Lucas App. No. L-97-1160, unreported, at 3, 1998 WL 336923.
[6] State's Exhibit 2, which consisted of medical and child abuse reports, was admitted into evidence without objection even though it included the name of appellant as the suspected abuser. Again, we recognize that the state failed to lay a proper foundation with respect to this exhibit in that the state did not ask whether it was hospital procedure for the attending nurse or physician to determine "who did this?" Nevertheless, this exhibit would have been admissible if a proper foundation would have been laid, and thus does not rise to the level of plain error.
[7] J.G. referred to her genital as her "front area" or "private area."
[8] Attempted rape is defined as conduct that, if successful, would result in the commission of rape. R.C. 2923.02(A).