DECISION
{¶ 1} Plaintiffs-appellants, Freddie Osborne and Phyllis Osborne, appeal from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, The Kroger Company.
 {¶ 2} Appellants, husband and wife, initiated this action after Mr. Osborne suffered injuries in a fall after slipping in a puddle of water in a Kroger grocery store in Gahanna, Ohio. Mrs. Osborne asserted a claim for loss of consortium.
 {¶ 3} In deposition testimony, Mr. Osborne testified that he did not notice the water on the floor of the store before slipping and falling, could not ascertain the source of the water or how long the water had been present at the time of his fall, nor had he noticed any characteristics of the puddle such as discoloration, dirt, or odor that would indicate the length of time it had been present. Mr. Osborne was unable to state from firsthand knowledge whether any Kroger employee was aware of the puddle before he fell.
 {¶ 4} The limited information Mr. Osborne was able to provide regarding the cause of his fall was obtained from an unidentified witness at the scene, whose statement was proposed by appellants as admissible hearsay testimony. Mr. Osborne testified in his deposition that, after his fall, a woman who had been tending a sample table in the store approached him and, in the same conversation, gave two conflicting versions on the source of the puddle. The woman first stated that someone had dropped or spilled fluids. Shortly thereafter, she stated that, to the contrary, the water was flowing from beneath a cooler unit. Most significantly, the woman did consistently state that she had informed "them," presumably store personnel, of the presence of the water some 15 or 20 minutes before Mr. Osborne's fall, and had asked that it be cleaned up. Appellants were apparently unable to locate or identify the person making these statements in order to produce her testimony in the case.
 {¶ 5} When Kroger filed for summary judgment, the principal argument in support thereof was that appellants had not presented competent evidence to support all elements of their claims; specifically, that there was no admissible evidence to show that store personnel knew or should have known of the presence of the puddle prior to Mr. Osborne's fall. Appellants, while admitting that they could provide no direct testimony from personal knowledge about the source of the water, argued that the statements of the unidentified sample-table attendant, while hearsay, were admissible under the excited-utterance exception. The trial court ruled the statements inadmissible and, accordingly, granted summary judgment for Kroger.
 {¶ 6} Appellants have timely appealed and bring the following assignment of error:
 {¶ 7} "THE TRIAL COURT ERRED IN EXCLUDING THE STATEMENT OF THE WITNESS AS HEARSAY."
 {¶ 8} The present matter was decided on summary judgment. Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992), 65 Ohio St.3d 621, 629, citing Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64. Additionally, a moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory assertions that the nonmoving party has no evidence to prove its case. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Rather, the moving party must point to some evidence that affirmatively demonstrates that the nonmoving party has no evidence to support his or her claims. Id.
 {¶ 9} An appellate court's review of summary judgment is de novo. Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588; Patsy Bard v. Society Nat. Bank, nka KeyBank (Sept. 10, 1998), Franklin App. No. 97APE11-1497. Thus, we conduct an independent review of the record and stand in the shoes of the trial court. Jones v. Shelly Co. (1995),106 Ohio App.3d 440, 445. As such, we have the authority to overrule a trial court's judgment if the record does not support any of the grounds raised by the movant, even if the trial court failed to consider those grounds. Bard, supra.
 {¶ 10} In slip-and-fall cases such as this, the law in Ohio is well-settled: The store or business is not liable for a customer's injuries unless the customer can show (1) the store owner caused the hazard, or (2) the store or its employees had actual knowledge of the hazard and neglected to safeguard patrons against it through removal or effective warning, or (3) the hazardous condition had existed for sufficient time to justify the inference that the failure to warn against it or remove it was attributable to a lack of ordinary care. Anaple v. Standard Oil Co. (1955), 162 Ohio St. 537, paragraph one of the syllabus; Barker v. Wal-Mart Stores, Inc. (Dec. 31, 2001), Franklin App. No. 01AP-658. Counsel for appellants has couched this appeal in commendably straightforward terms: Quite simply, it is conceded that, in the absence of the disputed hearsay statements, appellants cannot survive summary judgment by demonstrating the evidence going to all elements of their claim. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally inadmissible. Evid.R. 802. Among the multiple exceptions to the hearsay rule found in Evid.R. 803, appellants rely on Evid.R. 803(2):
 {¶ 11} "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 {¶ 12} "* * *
 {¶ 13} "(2) Excited utterance
 {¶ 14} "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."
 {¶ 15} The following passages from Mr. Osborne's deposition constitute the disputed statements in the present case:
 {¶ 16} "Q. Did anyone tell you where this water came from?
 {¶ 17} "A. The only thing that I was told at the time was it was water was — I at the time thought they had dropped something and spilled the water, because somebody said they had a jug that they had dropped. And then I heard it was coming out underneath the cooler. So there was two versions how the water got to the spot where it was at.
 {¶ 18} "Q. Who is `they'?
 {¶ 19} "A. The lady that was working the corner of some kind of food where you-you know, they have the samples, and you taste and see if it's okay, you know, if you like it, and try to sell it.
 {¶ 20} "* * *
 {¶ 21} "Q. Okay. Was the water to the — in front of the cooler or to the side of the cooler?
 {¶ 22} "A. It was just coming out from underneath, and I don't know.
 {¶ 23} "Q. Okay. How do you know it was coming out from underneath?
 {¶ 24} "A. The way that the water was coming, and they said there was a leak in it, to me, the store people — the store said that the water was coming out from under the cooler.
 {¶ 25} "Q. Okay. Who from the store said that the water was coming out from under the cooler?
 {¶ 26} "A. I want to say that it was the lady that was a working there.
 {¶ 27} "Q. Okay. There are an awful lot of people. Is this the —
 {¶ 28} "A. She was not the Kroger employee.
 {¶ 29} "Q. Was she the woman by the table?
 {¶ 30} "Yes.
 {¶ 31} "Q. Okay. And what did she say about water coming out from underneath the cooler?
 {¶ 32} "A. She — she just said that there was water that was there, and she had asked them sometime to get it cleaned up, and no one had come back to dry it up.
 {¶ 33} "Q. Okay. Did she say when she had asked?
 {¶ 34} "A. Who she asked?
 {¶ 35} "Q. No, when.
 {¶ 36} "A. She said it was — the only thing I recall her saying, it was 15 or 20 minutes ago, she had asked for someone to come and clean up the water.
 {¶ 37} "Q. Okay. When are you having this conversation with her?
 {¶ 38} "A. She was saying this at the time that I was laying on the floor for the emergency squad to come and get me." (Tr. 42-46.)
 {¶ 39} The rationale behind the exception for excited utterances under Evid.R. 803(2), as with other exceptions to the general exclusion of hearsay evidence, is founded on the reliability of the statement: "`Reactive excited statements are considered more trustworthy than hearsay generally on the dual grounds that, first, the stimulus renders the declarant incapable of fabrication and, second, the impression on the declarant's memory at the time of the statement is still fresh and intense. Accordingly, Rule 803(2) assumes that excited utterances are not flawed by lapses of memory or risks of insincerity.'" State v. Taylor (1993), 66 Ohio St.3d 295, 300, quoting 1 Weissenberger's Ohio Evidence (1992), Section 803.16. In Taylor, the Supreme Court reaffirmed the viability and applicability of a four-part test for excited utterances first set forth in Potter v. Baker (1955), 162 Ohio St. 488, paragraph two of the syllabus:
 {¶ 40} "Such testimony as to a statement or declaration may be admissible under an exception to the hearsay rule for spontaneous exclamations where the trial judge reasonably finds (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration." (Emphasis added.)
 {¶ 41} The last two elements in Potter, that the slip and fall was a startling event and that the unidentified declarant made statements relating to the startling event, are not at issue in the present case. Rather, the trial court found that there was insufficient foundation set forth in Mr. Osborne's deposition testimony to establish that the declarant had witnessed the startling event (Mr. Osborne's fall), or that she had made the statement "before there had been time for the resulting shock and nervous excitement to lose dominion over her reflective faculties," such that the statements were the "unreflective and sincere expression of her actual impression and beliefs."
 {¶ 42} The party seeking to admit a statement under Evid.R. 803(2) bears the burden of showing that the statement was made while the declarant was under the stress of a startling event or condition, and mere evidence of the occurrence of a startling event alone is not enough. State v. Tanner (1993), 90 Ohio App.3d 761, 772. The only evidence in the record regarding the declarant's possible observation of Mr. Osborne's fall is Mr. Osborne's diagrammatic description of the location of his fall in relation to the sample table which the declarant, he presumed, was attending. From this, appellants ask that an inference be drawn that the declarant was in fact present at her sample table and a direct witness to the fall. The deposition testimony establishes that Mr. Osborne could not specifically recall seeing the declarant prior to his fall, although he did describe the declarant making her statements while Mr. Osborne was still lying on the ground, unable to get up because of injuries sustained.
 {¶ 43} The trial court rightly noted that the question of whether the declarant actually witnessed Mr. Osborne's fall is significant, because merely coming across Mr. Osborne lying on the ground probably does not rise to the level of a startling event required to invoke the excited-utterance rule. Merely being "upset" does not meet the standard for admissibility under Evid.R. 803(2); in order to ensure the reliability of the declaration of the statement, more powerful indicia of influence overriding the reflective faculties of the declarant are necessary. Taylor, 66 Ohio St.3d at 300. Cases that invoke the excited utterance exception typically involve automobile accidents, assaults, or similarly impactful events: State v. Moorman (1982), 7 Ohio App.3d 251
(witness to robbery); State v. Wallace (1988), 37 Ohio St.3d 87 (victim of child abuse and physical assault); State v. Cornell (1998),129 Ohio App.3d 106 (severely beaten domestic violence victim). While slip-and-fall cases can be found in which the excited-utterance rule was invoked, these generally involve statements by a witness or victim of the actual fall. See, e.g., Sawyer v. Elder Beerman Stores Corp. (Nov. 10, 1993), Licking App. No. 93CA-44.
 {¶ 44} While we would not flatly hold that the aftermath of an accident could never be so startling as to invoke the excited-utterance exception, the present facts do not give cause to so find. In fact, the present case is similar to the circumstances found in Potter, which involved an automobile accident. The statements found inadmissible under the excited-utterance exception by that court were similarly uncertain as to the simulative event which had provoked them:
 {¶ 45} "Thus, as to the startling occurrence which may have rendered this declaration spontaneous, there is some doubt as to whether it was the accident in which plaintiff was injured or, instead, merely declarant seeing plaintiff lying on the pavement in her helpless condition * * *. Furthermore, apart from the declaration and the fact that the declarant was present at some time very shortly after the accident, there is nothing to show that, just before the accident, the declarant had `an opportunity to observe personally' whether defendant's automobile did or did not [run] the light." Potter at 498.
 {¶ 46} Aside from the occurrence of a sufficiently startling event witnessed by the declarant, appellants also bear the burden of demonstrating that this event sufficiently affected the declarant as to make Evid.R. 803(2) applicable. Relevant factors in ascertaining whether the declarant was in a sufficient state of excitement or stress include outward indicia of emotional state such as tone of voice, accompanying actions, and general demeanor. State v. Jorden (1999), 134 Ohio App.3d 131; State v. Ewers (July 16, 1999), Erie App. No. E-97-112. Merely being unsettled or upset will not make a statement admissible under Evid.R. 803(2), State v. Street (1997), 122 Ohio App.3d 79, and this seems particularly applicable to situations, such in the case before us, where the startling event is not of a nature to create powerful inference that anyone witnessing it would of necessity be in such a state of shock that her reflective processes had been stilled.
 {¶ 47} We particularly note the absence of exited or stressed demeanor on the part of the declarant, at least as described in Mr. Osborne's testimony, in the present case because of the lack of evidence that the witness actually observed Mr. Osborne's fall. A description of a hysterically upset witness blurting out excited statements might sufficiently counterbalance the absence of a direct view of a fall, in the presence of the less shocking circumstance of simply finding the victim prostrate on the floor, and argue for admissibility under the excited-utterance exception. However, in the present case, both the nature of the event, the lack of evidence that the declarant actually witnessed a fall, and the lack of any evidence that the declarant was otherwise distraught or so affected that the statements would bear the indicia of reliability necessary for application of Evid.R. 803(2), support the trial court's ruling.
 {¶ 48} We accordingly find that the trial court did not err in finding that the foundational elements for admissibility under Evid.R. 803(2) had not been demonstrated by appellants, and Mr. Osborne's description of the statements uttered by the unknown declarant would be inadmissible. Because there is no other evidence as to the source of the water on the floor which caused Mr. Osborne to slip, or as to whether the occupier of the premises had sufficient notice of the presence of the hazard, summary judgment in favor of appellee was appropriate. Appellants' assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas granting summary judgment to appellee is affirmed.
Judgment affirmed.
BOWMAN and WATSON, JJ., concur.
DESHLER, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.