**The STATE of Ohio, Appellee,**

· **v.**

**LENT, Appellant.**

[Cite as *State v. Lent* (1997), 123 Ohio App.3d 149.]

Court of Appeals of Ohio,
Fourth District, Gallia County.

No. 96CA16.

Decided Sept. 29, 1997.

*Brent A. Saunders*, Gallia County Prosecuting Attorney, for appellee.

*Richard Roderick*, for appellant.

HARSHA, Judge.

Steven York Lent appeals his conviction in the Gallia County Court of Common Pleas for felonious assault, in violation of R.C. 2903.11. He assigns the following errors for our review:

I. "The prosecuting attorney's misstatements of the law or facts during closing argument denied the defendant a fair trial."

II. "The trial jurors violated their oath as jurors when they failed to consider all the evidence and this prevented the defendant from having a fair trial."

III. "The court committed error prejudicial to the defendant when the court overruled the defendant's motion for a new trial."

IV. "The court's arbitrary ruling allowing the defense to expend no more than $2,500.00 to hire a psychologist prevented the defendant/appellant from having a fair trial."

In June 1996, the Gallia County Grand Jury returned a one-count indictment against appellant, charging him with felonious assault in violation of R.C. 2903.11. Appellant had admitted to "spanking" his live-in girlfriend's child with a leather belt while he was babysitting the child. The child was severely bruised. Appellant entered a plea of not guilty and not guilty by reason of insanity. The court ordered an evaluation by Dr. Omar Dye, Ph.D., to determine appellant's competency to stand trial and his mental condition at the time of the commission of the offense. Upon review of the evidence, the court determined that appellant was competent to stand trial and that he was sane at the time of the commission of the alleged act. The court then granted appellant permission to hire Dr.

Jeffrey Smalldon, Ph.D., at a fee not to exceed $2,500 to evaluate appellant on the issue of competency and the merits of his plea of not guilty by reason of insanity. The court also ordered Dr. Jim Barna, Ph.D., J.D., to evaluate the defendant on the merits of his plea of not guilty by reason of insanity.

■ Appellant was tried by a jury. All three psychologists who had evaluated appellant testified at the trial. They all agreed that appellant did not meet the criteria to be found not guilty by reason of insanity. However, two of the psychologists found that appellant was seriously mentally ill. After a two-and-one-half-day trial, the jury deliberated for approximately forty-five minutes. The jury found appellant guilty of felonious assault as charged in the indictment. The court considered the factors set forth in R.C. 2951.02 and 2929.12 as to the sentence to be imposed and found that probation was not proper in this case. Appellant was then sentenced to the Orient Correctional Facility for a period of incarceration of not less than five years nor more than fifteen years, the minimum term of five years to be served as actual incarceration. Appellant filed a timely notice of appeal.

■ Appellant's first assignment of error argues that he was denied a fair trial due to prosecutorial misconduct. Appellant contends that the prosecutor made misstatements of law or facts during closing argument that were not cured by objection or curative instruction. The proper inquiry on review of a case involving prosecutorial misconduct is whether the conduct deprived the defendant of a fair trial, not the culpability of the prosecutor. *State v. Keenan* (1993), 66 Ohio St.3d 402, 405, 613 N.E.2d 203, 206–207; *State v. Slagle* (1992), 65 Ohio St.3d 597, 606, 605 N.E.2d 916, 926. In determining whether to reverse a case based upon prosecutorial misconduct, the appellate court must determine whether the remarks made were improper, and if so, whether they prejudicially affected substantial rights of the accused. *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293, 299–300.

During closing argument, in response to defense counsel's argument that the "spanking" left no scars on the victim and did not break the child's skin, the prosecutor implied that the child had emotional scars that would be with him for the rest of his life. Appellant objected to this remark, stating that there was no evidence indicating any psychological damage suffered by the child. The trial court sustained appellant's objection. Appellant did not request any further curative instruction.

■ The prosecutor also stated that he was surprised at the defense counsel's remark that "his client intentionally struck that little boy." Appellant did not object to the prosecutor's remark. In fact, at the time the statement was made, appellant's counsel interrupted and said, "I submit, well, I'm sorry, I withdraw.

Go ahead." After the prosecutor finished his rebuttal, defense counsel approached the bench and argued that the prosecutor's remark was inappropriate and that an instruction would cure the problem. The prosecutor argued that he had repeated defense counsel's statement to prove the element of intent. The judge instructed the jury, stating:

"Ladies and gentlemen, before you retire I want to uh, in closing remarks apparently the State had made some reference to the matter of something being done intentionally. I would instruct you as a matter of law and I have already instructed you that the, the standard that you are to review this is on is the standard of knowingly and not intentionally. And the fact that someone may have done something intentionally does not mean the State has proved the defendant has acted knowingly. So the standard that you must review is the standard that I gave to you."

The curative instruction given by the judge was the instruction provided by defense counsel, who stated that it would cure any problem with the prosecutor's remark.

Improper inferences made by a prosecutor in argument are not grounds for a reversal where an objection is sustained and the jury is adequately warned to disregard the inference. *State v. Wilson* (1972), 30 Ohio St.2d 199, 204, 59 O.O.2d 220, 222–223, 283 N.E.2d 632, 636. Further, considerable latitude is permitted in closing arguments. *State v. Maurer* (1984), 15 Ohio St.3d 239, 268, 15 OBR 379, 404, 473 N.E.2d 768, 794. Thus, we are not persuaded that appellant was denied a fair trial. Accordingly, appellant's first assignment of error is overruled.

Appellant argues in his second assignment of error that the jurors violated their oath when they failed to consider all of the evidence, denying appellant his right to a fair trial. Appellant did not testify at trial. He stipulated at trial that he had hit the child with a leather belt, but argued that he was not guilty by reason of insanity. He submitted three psychological reports that "told" his life history relating to mental illness. Each juror received his own copy of the reports. Appellant contends that since the jurors deliberated for only forty minutes, they could not have read and considered these reports. Thus, he argues, the jury did not consider all of the evidence. Further, appellant asserts that a juror told him that they replayed the 911 tape in the jury room, but that he was never informed. He submits that there could have been inadmissible evidence included on the tape which the jury heard and which unduly prejudiced him. Upon our review, we conclude that appellant's arguments are without merit.

The deliberations of the jury may not be scrutinized unless there is some evidence from a competent source other than a juror to impeach the jury verdict. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 75, 564 N.E.2d 54, 61. Once evidence is established from an outside source, then a juror may testify concerning the deliberations. *Id.* This restriction, known as the *aliunde* rule, was adopted in Evid.R. 606(B), which provides:

"Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented. However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes."

Furthermore, an attorney's testimony is also incompetent and may not be used to impeach a jury verdict or establish the foundation of evidence *aliunde* where a juror told the attorney information regarding the deliberations. *Schiebel, supra*, at paragraph two of the syllabus.

Appellant failed to submit any affidavits or other evidence *aliunde* indicating jury misconduct. He contends that the short period of time in which the jury deliberated is indicative of jury misconduct. However, the amount of time a jury spends in deliberations is not indicative of its consideration of the evidence. It is important to note that none of the reports concluded that appellant was not guilty by reason of insanity, a fact which was pointed out at trial. The defendant's sanity was the only contested issue at trial. Accordingly, a brief deliberation time does not suggest juror misconduct. See *Smith v. Dunn* (June 26, 1996), Hamilton App. No. C–950270, unreported, 1996 WL 348011; *State v. Brown* (Sept. 28, 1990), Stark App. No. CA–8134, unreported, 1990 WL 163696.

The only evidence submitted by appellant regarding the 911 tape was a discussion between appellant's attorney and a juror that the tape was replayed during deliberations. Appellant never objected to the admissibility of the tape

during trial.[1] Accordingly, he is unable to raise any error with regard to the tape on appeal. A reviewing court will not consider issues which an appellant failed to raise initially in the trial court. *Lippy v. Society Natl. Bank* (1993), 88 Ohio App.3d 33, 623 N.E.2d 108. Furthermore, appellant did not submit any evidence *aliunde* with regard to the 911 tape. Neither the juror nor appellant's attorney may testify to impeach the jury verdict. Evid.R. 606(B). Because the record does not contain any evidence of jury misconduct or evidence that the jury violated its oath by failing to consider all of the evidence presented, we determine that appellant was not denied his right to a fair trial. Thus, appellant's second assignment of error is without merit.

 In his third assignment of error, appellant contends that the trial court erred in overruling his motion for a new trial. However, appellant failed to assign and argue any specific errors made by the trial court. Appellant argues that many errors occurred throughout the proceedings and that the multitude of unspecified, minor errors merits a new trial. Pursuant to App.R. 12, the court of appeals shall determine an appeal on its merits on the assignments of error set forth in the briefs. App.R. 16 requires appellant to include in his brief an argument containing his contentions under each assignment of error and the reasons in support of his contentions, with citations to the authorities, statutes, and parts of the record on which he relies. Since appellant failed to assign and argue any specific errors with respect to the trial court's failure to grant his motion for a new trial, we are unable to address the merits of appellant's third assignment of error. App.R. 12; App.R. 16. Accordingly, appellant's third assignment of error is overruled.

 Lastly, appellant argues that he was denied a fair trial when the court ruled that he could expend no more than $2,500 to hire a psychologist on his behalf. Upon the court's finding that appellant was competent to stand trial and was sane at the time of the commission of the offense, appellant filed a motion to allow him to employ Dr. Jeffrey Smalldon, Ph.D., for an independent evaluation. Appellant stated in his motion that Smalldon had agreed to perform the evaluation and testify at trial for a fee not to exceed $2,500. The trial court granted appellant's motion, allowing him to hire Smalldon to evaluate him on the issue of competency and the merits of his plea of not guilty by reason of insanity, at a fee not to exceed $2,500, which was the exact fee amount requested. The court further ordered that Smalldon receive copies of all medical records and tests that had been performed on appellant. Subsequently, Smalldon evaluated appellant

---

1. Appellant implies that the tape was inadmissible because he was not advised of his *Miranda* rights. Since the tape was not obtained as a result of custodial interrogation, the holding in *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, does not apply.

on the issue of his sanity and testified at the trial. It was his opinion that appellant had a severe mental illness, but that his mental illness did not prevent him from knowing right from wrong at the time of the offense.

Appellant argues that his defense was severely limited because of the "arbitrary" amount of money he was allowed to spend to hire a psychologist. Under R.C. 2945.39(A), a court may order one to three evaluations of a defendant's mental condition when the defendant has pled not guilty by reason of insanity. R.C. 2945.39(C) allows the defendant to obtain an independent expert evaluation, if the court does not designate an examiner recommended by the defendant pursuant to division (A) of that section. Here, the court initially ordered one evaluation, and thus was not required to hire an examiner chosen by the appellant. R.C. 2945.39(A). However, the court gave the appellant an opportunity to have another expert evaluation if he so desired. The trial court granted appellant's motion to hire Smalldon.

Under R.C. 2945.39(C), if the defendant is unable to pay for the expert evaluation, it will be obtained for him at public expense. The examiner shall be paid a reasonable amount for his services and expenses, as certified by the court. R.C. 2945.39(C). It is within the trial court's discretion to set the amount of funds to employ an expert witness. *State v. Peeples* (1994), 94 Ohio App.3d 34, 39, 640 N.E.2d 208, 211–212; *State v. Buckner* (July 24, 1985), Ross App. No. 1112, unreported, 1985 WL 9411. Here, the court limited the fee to be paid for the evaluation to $2,500. However, the fee amount provided for by the court was the exact amount requested by appellant and the amount to which Smalldon had agreed. Furthermore, Smalldon completed his evaluation of appellant and testified at trial. Thus, we conclude that the fee amount ordered by the trial court was not unreasonable, arbitrary, or unconscionable.

Appellant also contends that it would have been beneficial for Smalldon to testify after the state's expert in order to question the methodology used to conduct his examination, but that Smalldon could not afford to change the time he was scheduled to testify. Due to scheduling conflicts, appellant called Smalldon to testify out of order, prior to the testimony of the state's expert witness. Appellant's counsel stated at trial that it was his fault for calling Smalldon early, but that he had planned for his testimony "a long time ago and things didn't work out." It wasn't until after appellant heard the testimony of Barna, the state's chosen psychologist, that he wished Smalldon had testified at a different time in the trial. However, Smalldon agreed with the other two experts, who also testified that appellant was not legally insane at the time of the commission of the offense. Thus, even if Smalldon would have disagreed with the methodology used by the other experts, he still reached the same conclusion. Under these facts, we determine that the trial court did not abuse its discretion in setting Smalldon's

fee at $2,500, and appellant was not denied his right to a fair trial. Appellant's fourth assignment of error is without merit. The judgment of the trial court is affirmed.

*Judgment affirmed.*

STEPHENSON, P.J., and PETER B. ABELE, J., concur.