[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[1] Although appellee spells his name "O'Connor," with an "o" rather than "O'Conner," the entry appealed from uses the "O'Conner" spelling, and hence we retain the misspelling in our caption.
 DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-Appellant Cynthia E. Patton appeals the judgment of the Highland County Court of Common Pleas, Juvenile Division, which denied her motion to suspend or modify the visitation of Plaintiff-Appellee Kevin O'Connor with the parties' daughter Mariah. Appellant asserts that the trial court erred: 1) by admitting into evidence the out-of-court statements of a two-year-old child without determining the child was competent to testify; 2) by issuing its decision before receiving appellant's response to appellee's proposed findings of fact and conclusions of law, in contradiction to the trial court's prior order; 3) by failing to consider out-of-court statements of a two-year-old child that were submitted in accordance with Evid.R. 807; and 4) by failing to consider the best-interests-of-the-child factors as enumerated in R.C. 3109.051.
 {¶ 2} For the reasons that follow, we disagree with appellant and affirm the decision of the trial court.
 Facts and Proceedings Below {¶ 3} On June 19, 1999, Mariah Anne was born to Defendant-Appellant Cynthia E. Patton and Plaintiff-Appellee Kevin O'Connor. Evidently, in August 1999, an affidavit acknowledging paternity was executed pursuant to R.C. 5101.324.
 {¶ 4} In June 2001, appellee filed a complaint in the Highland County Court of Common Pleas, Juvenile Division, seeking the allocation of parental rights and responsibilities. Appellee sought sole custody of Mariah Anne, child support, and the tax exemption. Along with the complaint, affidavits, and other documentation, appellee filed a motion for emergency temporary custody, asserting that appellant regularly failed to reside with Mariah, leaving the child instead with appellant's parents "who do not provide the child with safe and appropriate housing."
 {¶ 5} Subsequently, the juvenile court denied appellee's motion for temporary custody.
 {¶ 6} Thereafter, appellant filed an answer to appellee's complaint claiming that appellee was "rough and abusive" towards Mariah. Appellant also asserted a counter-claim seeking payment for the expenses resulting from the child's birth and child support from the date paternity was acknowledged.
 {¶ 7} In August 2001, the trial court ordered that genetic testing be conducted to determine whether appellee was Mariah's natural father. The results of those genetics test established that appellee is Mariah's father.
 {¶ 8} Subsequently, on November 15, 2001, the trial court issued an entry allocating parental rights. The trial court found by clear and convincing evidence that appellee was the natural father of Mariah Anne. Further, the trial court found that, after considering the statutory factors outlined in R.C. 3109.042 and 3109.04(F)(1)(a) — (j), it was in Mariah's best interests that appellant be designated the residential parent and legal custodian. The trial court also found that beginning on November 18, 2001, appellee should be granted visitation rights pursuant to the trial court's standard schedule.[4]
 {¶ 9} The trial court also determined that insufficient evidence had been presented to resolve support and insurance issues and ordered the parties to submit income information to the Highland County Child Support Enforcement Agency (CSEA) and execute a standard health insurance order. Nevertheless, the trial court ordered that the child support obligation should accrue as of June 22, 2001, and that any arrearages should be paid in full by February 1, 2002. The juvenile court refused to address the tax exemption issue until appellee's child support obligation was calculated. Finally, the trial court overruled appellant's request for reimbursement for miscellaneous expenses incurred on Mariah's behalf.
 {¶ 10} On November 18, 2001, appellee had his first court-scheduled visitation with Mariah. At approximately 1:00 p.m. appellee arrived at the residence of Mariah's maternal grandparents to pick her up for the afternoon. Apparently, when Mariah was placed into her car seat in the rear of appellee's vehicle, appellee noticed a mark on Mariah's arm near her elbow. Appellee asked Mariah what happened, to which she responded, "My grandma burnt me." Appellee proceeded to take Mariah to the park and to visit with his family.
 {¶ 11} Upon appellee's and Mariah's return to her maternal grandparent's residence, appellant's mother came out to remove Mariah from appellee's vehicle. At that time, Mariah was allegedly crying. While removing the child from the vehicle, Mariah's maternal grandmother asked Mariah what was wrong, to which the child answered, "Mama, daddy hurt me." Appellant's mother sought clarification from the child and the child once again stated, "daddy hurt me [sic] arm." Evidently, appellee heard the child's answer and responded by stating, "Daddy didn't hurt you, baby, daddy loves you." Appellee explained to Mariah's maternal grandmother that Mariah had fallen and scratched her hand while at the park. Mariah's maternal grandmother proceeded to take Mariah out of the vehicle and took her into the house, at which time she noticed that Mariah was not moving her left arm, that "it was just dangling."
 {¶ 12} Shortly after Mariah's arrival at her maternal grandparent's residence, appellee and Mariah's grandmother took Mariah to the emergency room to have her left arm examined. While at the emergency room, Mariah restated to the attending nurse that, "daddy pulled on it." Medical personnel examined Mariah's arm and x-rays were taken. The x-rays did not reveal any abnormalities with Mariah's elbow, but the emergency room staff placed the arm in a splint and sling, suspecting a possible strain or fracture. Mariah was referred to an orthopedic clinic for further evaluation.
 {¶ 13} On November 20, 2001, Dr. James Muccio examined Mariah's arm. Dr. Muccio determined that Mariah's elbow was either fractured or she suffered from "spontaneously re-located nursemaids elbow." Dr. Muccio's course of treatment was to place Mariah's left arm into a long-arm cast and follow up with further x-rays in one month.
 {¶ 14} On November 23, 2001, appellant filed an ex parte motion for emergency order suspending appellee's visitation with Mariah and requesting a hearing on the motion. Appellant asserted that when Mariah returned from visitation with appellee it was discovered that she had suffered an elbow fracture. Appellant also asserted that Mariah repeatedly mentioned that appellee had caused the injury. In support of her motion, appellant submitted medical records from the emergency room visit and the visit with the orthopedic doctor. Appellant also filed, pursuant to Evid.R. 807, a notice of intent to use Mariah's out-of-court statements, which asserted that appellee had injured her. Further, appellant filed affidavits executed by her, Mariah's maternal grandmother, and an emergency room nurse, all indicating that Mariah informed them that appellee had caused the injury to her elbow.
 {¶ 15} The juvenile court subsequently modified its November 15, 2001 entry allocating parental rights, such that appellee's visitation with Mariah would occur in appellant's home, under appellant's or Mariah's maternal grandmother's supervision.
 {¶ 16} In December 2001, CSEA notified the juvenile court of appellee's child support obligation. Appellee's child support obligation was calculated to be $282.71 per month. The parties also had executed a standard health insurance order. The trial court filed an entry ordering appellee to pay the monthly child support obligation as calculated by CSEA.
 {¶ 17} Subsequently, appellee filed his own motion to amend his visitation with Mariah. Appellee requested that the juvenile court amend visitation such that it would take place at appellee's mother's home or, in the alternative, at McDonald's in Hillsboro, Ohio. Appellee also requested additional time within which to pay his child support arrearages. Appellee also filed, pursuant to Evid.R. 807, a notice to use Mariah's out-of-court statement that her maternal grandmother had burned her. Appellee attached to his Evid.R. 807 notice an affidavit executed by his brother-in-law indicating that Mariah had stated in his presence that her maternal grandmother had burned her. Finally, appellee filed a motion asking that the trial court change the transfer location for visitation from appellant's residence to the Hillsboro Police Department.
 {¶ 18} In February 2002, the trial court issued an entry, amending visitation to take place as previously ordered, but at the McDonald's in Hillsboro, Ohio. The trial court, however, postponed ruling on appellee's motion to amend the child support arrearage payment date.
 {¶ 19} On April 3, 2001, a hearing was held, and several witnesses testified, including: 1) Karen Patton, Mariah's maternal grandmother; 2) appellant; 3) Debbie Brammer, emergency room nurse who attended Mariah; 4) Mark McCann, appellee's brother-in-law; 5) Joe O'Connor, appellee's brother; 6) Cory Richards, appellee's neighbor; and 7) appellee. Also, Dr. Muccio's deposition was submitted to the court and the parties stipulated that the juvenile court could consider it in lieu of the doctor testifying at the hearing.
 {¶ 20} Following the hearing, the trial court issued an entry indicating that the parties had until April 12, 2002, to submit proposed findings of fact and conclusions of law and April 19, 2002, to file their responses. Both parties timely filed their proposed findings of fact and conclusions of law. However, on April 16, 2002, the trial court issued its decision and judgment entry adopting several of the findings proposed by the parties. On that same date, appellant filed her response to appellee's proposed findings of fact and conclusions of law.
 {¶ 21} In its judgment, the trial court found that Mariah had suffered some trauma to her left elbow, but that the evidence did not show how the injury occurred, who or what caused the injury, or when the injury occurred. Accordingly, the trial court determined that appellee's visitation should not be modified and overruled appellant's motion requesting permanent modification. The trial court ordered that appellee's visitation rights, as set forth in its November 15, 2001 entry, should resume April 21, 2002. Also, the trial court overruled appellee's motion seeking additional time within which to pay his child support arrearage. Finally, the trial court changed the transfer location for appellee's visitation from appellant's residence to the Hillsboro Police Department.
 The Appeal {¶ 22} Appellant appeals the judgment of the trial court and presents the following assignments of error.
 {¶ 23} First Assignment of Error: "It was error for the trial court to permit and consider the out of court statements of the 2 year old [sic] declarant offered by appellee without any prior determination by the court that the child is competent to testify."
 {¶ 24} Second Assignment of Error: "It was error for the trial court to issue its decision and judgment entry prior to its receipt and consideration of all of the proposed findings of fact and conclusions of law in conformity with its order."
 {¶ 25} Third Assignment of Error: "It was error for the trial court to fail to consider the out of court statements of the 2 year old [sic] declarant offered by appellant since all of the necessary prerequisites for admission had been met and, thus, it had already been determined that the statements possess a `circumstantial probability of trustworthiness.'"
 {¶ 26} Fourth Assignment of Error: "The trial court erred by failing to consider the enumerated factors of O.R.C. § 3109.051(C) and(D)(1)-(16) [sic] in determining whether it is in the best interest of the child to grant parenting time rights to appellee and in establishing the specific parenting time schedule for appellee."
 {¶ 27} We will address these assignments of error in an order more conducive to our analysis.
 I. First Assignment of Error {¶ 28} Appellant's First Assignment of Error purportedly involves the application of Evid.R. 807, which provides an exception to the hearsay rule for out-of-court statements made by a child in cases where abuse is alleged. Specifically, appellant argues that the trial court erred in its application of Evid.R. 807 by admitting into evidence Mariah's statements that her grandmother had burned her. Appellant asserts that the trial court erred by not determining whether Mariah was competent to testify before admitting her statement that "My grandma burnt me," pursuant to Evid.R. 807.
 A. Standard of Review {¶ 29} Appellant's argument amounts to a challenge of the trial court's ruling on the admissibility of evidence. We generally review a lower court's rulings on the admissibility of evidence under an abuse of discretion standard. See State v. Davis, Jackson App. No. 01CA12, 2002-Ohio-2036; State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. An abuse of discretion is more than a mere error of law; it implies that the juvenile court's attitude was arbitrary, unreasonable, or unconscionable. See Rock v. Cabral (1993),67 Ohio St.3d 108, 112, 616 N.E.2d 218; Nakoff v. Fairview Gen. Hosp.,75 Ohio St.3d 254, 256, 1996-Ohio-159, 662 N.E.2d 1 (holding that to constitute an abuse of discretion, "the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will, but the perversity of will, not the exercise of judgment, but the defiance of judgment, not the exercise of reason but, instead, passion or bias.").
 B. Evid.R. 807 In General {¶ 30} Hearsay, as defined in Evid.R. 801, is inadmissible under Evid.R. 802 unless an exception applies. Evid.R. 803 contains twenty-two hearsay exceptions, which do not require the unavailability of the declarant, while Evid.R. 804 specifies six hearsay exceptions that require the declarant to be unavailable. Evid.R. 807 recognizes a hearsay exception for child abuse cases, which is in addition to those exceptions found in Evid.R. 803 and 804. See State v. Dever (1992), 64 Ohio St.3d 401,414, 596 N.E.2d 436 (quoting Staff Note to Evid.R. 807, which indicates that the hearsay exception in Evid.R. 807 is in addition to exceptions found in Evid.R. 803 and 804). Accordingly, if a statement is admissible under either Evid.R. 803 or 804, the application of, and determination of admissibility, under Evid.R. 807 is immaterial. See id.
 {¶ 31} Evid.R. 807 provides seven conditions for admissibility: 1) the child must be under twelve years of age at the time of the trial or hearing; 2) the statement must describe a sexual act performed by, with, or on the child, or it must describe an act of violence directed at the child; 3) the statement must be trustworthy; 4) the child's in-court testimony must not be reasonably obtainable; 5) the statement must be corroborated by independent proof; 6) the proponent of the statement must provide pretrial notice of its intent to use the statement ten days before the trial or hearing; and, 7) an admissibility hearing must be held and findings entered into the record. See Evid.R. 807; see, also, 2 Giannelli Snyder, Evidence (2 Ed. 2001) 210, Section 807.1.
 {¶ 32} In addition, while not directly addressed by Evid.R. 807, the Supreme Court of Ohio has clearly held that before a statement may be admitted pursuant to Evid.R. 807, the child-declarant must be shown to be competent under Evid.R. 601.[5] See State v. Said (1994),71 Ohio St.3d 473, 476, 644 N.E.2d 337 (stating that "Evid.R. 807 clearly does not dispose of the need to find a child competent."); see, also,State v. Black, supra; State v. Street (1997), 122 Ohio App.3d 79,701 N.E.2d 50; City of Akron v. Deem (1999), 135 Ohio App.3d 523,734 N.E.2d 877.
 C. Child's Statement Proffered by Appellee {¶ 33} From the record it is apparent that Mariah's statement that, "My grandma burnt me," was not admitted into evidence pursuant to Evid.R. 807 as argued by appellant. A review of the hearing transcript reveals that appellant objected to this out-of-court statement on the grounds that it did not fall into the excited utterance exception to hearsay under Evid.R. 803(2). See Evid.R. 807; State v. Dever,64 Ohio St.3d at 414, 596 N.E.2d 436 (indicating that the hearsay exception in Evid.R. 807 is in addition to exceptions found in Evid.R. 803 and 804). The same objection was raised with both witnesses who relayed the statement. The objection was not that the child-declarant was not competent or that the statement was inadmissible under Evid.R. 807. Thus, how could the trial court misapply Evid.R. 807 when the rule was not raised. Further, in its argument before this Court, appellant fails to assert that the trial court erred by admitting the statement pursuant to Evid.R. 803(2).
 {¶ 34} Accordingly, we need not address the purported application of Evid.R. 807 in regards to these particular statements, and we refuse to address whether the statements were admissible under Evid.R. 803(2), since appellant failed to present that issue for our review. See App.R. 16; State v. Lent (1997), 123 Ohio App.3d 149, 703 N.E.2d 836 (court of appeals will not consider an alleged error where the appellant fails to assign and argue the error in his or her appellate brief).
 {¶ 35} Accordingly, we overrule appellant's First Assignment of Error.
 II. Third Assignment of Error {¶ 36} In her Third Assignment of Error, appellant asserts that the trial court erred by failing to consider Mariah's statement that appellee injured her arm, which appellant asserts was properly admitted pursuant to Evid.R. 807.[6] In support of her contention, appellant cites to the lower court's judgment wherein the trial court found that how the trauma occurred to Mariah's elbow or who caused the trauma was not proven to a sufficient degree to modify appellee's visitation.
 A. Standard of Review {¶ 37} Appellant's assertion that the trial court failed to consider certain evidence amounts to a challenge that the trial court's judgment was against the manifest weight of the evidence.
 {¶ 38} Initially, we note that the judgment of a trial court should not be overturned as being against the manifest weight of the evidence if some competent and credible evidence supports that judgment. See C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, syllabus. Factual findings of the trial court are to be given great deference on review because the trial court is in a better position "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273; see, also, Myers v. Garson
(1993), 66 Ohio St.3d 610, 615, 614 N.E.2d 742.
 B. Trial Court's Judgment {¶ 39} As we already noted, the trial court found that, "The evidence does indicate Mariah suffered some trauma to her left elbow. However[,] who caused the trauma, the severity of the trauma, what caused the trauma or when the trauma occurred has not been proven to the [c]ourt to a sufficient degree to modify [appellee's] visitation." In support of its finding, the trial court particularly relied on the testimony of the orthopedic doctor who testified that he did not know how Mariah's injury occurred, that he did not know the nature or severity of the action that caused injury, and that he did not contact any child protection agency as a result of his examination of Mariah's injury. Also, the trial court found that based on appellant's testimony, appellant "did not know what or when something happened to Mariah," and that appellant had a bias against appellee and his family.
 {¶ 40} These findings are all supported by the record. Nobody at the hearing gave testimony of firsthand knowledge concerning the cause or severity of Mariah's injury. The only evidence as to the cause of the injury was the child's out-of-court statement that "daddy hurt me." Appellant now claims that the trial court did not consider the child's statement. However, the fact that the trial court ruled against appellant is not evidence that the trial court failed to consider the evidence before it, including Mariah's statement.
 {¶ 41} As we already noted, the credibility of witnesses and the weight given to the evidence are issues for the trier of fact. See Colev. Complete Auto Transit, Inc. (1997), 119 Ohio App.3d 771, 777-778,696 N.E.2d 289; GTE Telephone Operations v. J H Reinforcing Structural Erectors, Inc., Scioto App. No. 01CA2808, 2002-Ohio-2553, at ¶ 10; Reed v. Smith (Mar. 14, 2001), Pike App. No. 00CA650. The trier of fact is better suited than an appellate court to view the witnesses and observe their demeanor, gestures, and voice inflections and to use those observations in weighing credibility. See Myers v. Garson andSeasons Coal Co. v. Cleveland, supra. Thus, the trier of fact is free to believe all, part, or none of the testimony of any witness who appears before it, even one relating admissible hearsay. See Rogers v. Hill
(1998), 124 Ohio App.3d 468, 470, 706 N.E.2d 438; Stewart v. B.F.Goodrich Co. (1993), 89 Ohio App.3d 35, 42, 623 N.E.2d 591; see, also,State v. Nichols (1993), 85 Ohio App.3d 65, 76, 619 N.E.2d 80; State v.Harriston (1989), 63 Ohio App.3d 58, 63, 577 N.E.2d 1144.
 {¶ 42} In the case sub judice, the trial court apparently afforded little weight to Mariah's statement as related by several witnesses. This was well within its province. Accordingly, we find no reversible error, and we overrule appellant's Third Assignment of Error.
 III. Fourth Assignment of Error {¶ 43} In her Fourth Assignment of Error, appellant asserts that the trial court erred by not addressing the statutory "best interests of the child" factors set forth in R.C. 3109.051 before rendering its judgment on her motion to modify appellee's visitation in Mariah.
 {¶ 44} Appellant acknowledges that the trial court did consider the statutory factors in its earlier decision allocating parental rights and visitation, which was issued on November 15, 2001. It was only eight days later that appellant filed her motion seeking to suspend appellee's visitation, wherein she raised Mariah's injured arm as the only grounds for the motion.
 {¶ 45} Based on the circumstances of this case, it would have been superfluous for the trial court to again address every factor delineated in R.C. 3109.051. The only factors at issue were R.C. 3109.051(D)(7) and (11), which involve issues of safety, abuse, and neglect.[7] "[W]hen a parent seeks to modify a previous visitation arrangement, it is that party who bears the burden of proof as to whether the prior arrangement was not in the best interests of the children." Bodine v. Bodine (1988),38 Ohio App.3d 173, 175, 528 N.E.2d 973. In the judgment rendered by the trial court, which is hardly a "cookie cutter order" as appellant asserts, it found that appellant had not met her burden such that appellee's visitation should be modified (i.e., its evaluation of the "best interest" factors remained unchanged).[8]
 {¶ 46} Accordingly, appellant's Fourth Assignment of Error is overruled.
 IV. Second Assignment of Error {¶ 47} In her Second Assignment of Error, appellant asserts that she was prejudiced by the trial court's issuance of its judgment entry prior to the receipt of her response to appellee's proposed findings of fact and conclusions of law.
 {¶ 48} In its April 3, 2002 entry, the trial court ordered each party to submit his or her proposed findings of fact and conclusions of law by April 12, 2002. In addition, the trial court's entry instructed the parties that they had until April 19, 2002 to file a response to the opposing side's proposed findings and conclusions. However, on April 16, 2002, the trial court issued its decision and judgment entry. On this same date, appellant filed her response to appellee's proposed findings.
 {¶ 49} Clearly, the trial court did not consider appellant's response before issuing its decision. However, neither did the trial court consider any response, which could have been timely filed by appellee. Although it may seem unfair that the parties were not given the time to file their responses as laid out in the trial court's entry, the trial court was in no way required to consider or adopt those responses. See Civ.R. 52. Accordingly, appellant was in no way prejudiced by the timing of the juvenile court's judgment entry.
 {¶ 50} Therefore, we overrule appellant's Second Assignment of Error.
 Conclusion {¶ 51} We find no error which necessitates the reversal of the trial court's well-reasoned judgment. Accordingly, we overrule appellant's assignments of error in toto, and we affirm the judgment of the trial court.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellee recover of appellant costs herein taxed.
The Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the HIGHLAND COUNTY COURT OF COMMON PLEAS, JUVENILE DIVISION,
to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J., and Abele, J.: Concur in Judgment Only.
[4] The juvenile court's standard visitation schedule is a scaled schedule that grants the non-custodial parent more visitation time as the child grows older.
[5] Evid.R. 601 provides in part that children under ten years of age are incompetent to testify if they "appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." See State v. Said,71 Ohio St.3d at 476, 644 N.E.2d 337 (stating that "the essential questions of competency can be answered only through an in-person hearing"); see, also, State v.Wilson (1952), 156 Ohio St. 525, 532, 103 N.E.2d 552.
[6] As an aside, we note that appellant relies heavily on Evid.R. 807 for her arguments supporting her First and Third Assignments of Error. As we already noted, the trial court did not rely on Evid.R. 807 in admitting the child's statements concerning the burn mark on her arm. The court did, however, begin a discussion about Evid.R. 807 when addressing the admissibility of Mariah's statements in the emergency room. If the trial court did admit statements pursuant to Evid.R. 807, the analysis employed to do so was defective. For instance, not only does the rule require a hearing to determine the admissibility of the statement, it also requires specific findings. Furthermore, in the case sub judice, the trial court also would have had to determine the competency of the declarant, requiring an in-person questioning of the declarant by the court. However, this is not to say that the statements were not admissible under Evid.R. 803 or 804. For purposes of this appeal, however, we need not address the admissibility of the statements.
[7] R.C. 3109.051(D)(11) requires in part that a trial court consider "whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or neglected child."
[8] As an aside, we question whether the court's failure to state in its judgment that it had considered the statutory factors could even be considered "prejudicial" under the present scenario.