DECISION AND JUDGMENT ENTRY
{¶ 1} Timothy Dean appeals from the issuance of a domestic violence civil protection order ("CPO") against him. Dean contends that the court's judgment is against the manifest weight of the evidence, that the court abused its discretion by imposing the CPO for the full five-year term, and that the court erred in considering evidence of threats Dean made after the initial domestic violence incident. We conclude that there is some competent, credible evidence supporting the trial court's finding that Virginia Birkhimer, Dean's ex-wife, and Lionel, their son, are in danger of domestic violence from Dean and that a CPO was appropriate. Lionel testified that Dean struck him and intimidated him, and Birkhimer testified that Dean threatened her and her father. We also conclude that the court did not abuse its discretion in granting the CPO for five years because of the nature of the threats. Finally, since the evidence of threats Dean made towards Birkhimer and others following the initial domestic violence incident was relevant, it was proper for the court to consider it. Therefore, we affirm the court's judgment.
 {¶ 2} In early July 2002, Dean and his seventeen-year-old son, Lionel, argued about Lionel's unwillingness to assist his father in building a deck. According to Lionel, he was ill; however, according to Dean, Lionel was faking his illness because he stayed up too late the night before and was tired. During the argument, Dean threw a roll of trash bags at Lionel and told him that if he was not going to work, he could pack his belongings and find someplace else to live. Lionel testified that Dean cursed at him several times and screamed at him to "get back to work." Dean denies cursing at Lionel but acknowledges he was upset with his son and repeatedly told him to work on the deck.
 {¶ 3} Lionel telephoned Birkhimer, his mother, several times during the argument. Birkhimer overheard some of the comments Dean made to Lionel and instructed Lionel to go to his grandparents' house until things between him and Dean "cooled off." Lionel gathered some of his belongings and placed them in the vehicle that he normally drove, but that Dean owned. Dean told Lionel that he needed to take all of his belongings or they would not be there anymore. Lionel testified that he told Dean that he would call the sheriff if Dean did anything to his belongings. According to Lionel, this comment angered Dean and he came running down the porch stairs.
 {¶ 4} Lionel testified that he was seated in the car and had placed it in reverse when Dean stuck his arm in the window and placed the car in the park position. Dean contends that Lionel had placed the keys in the ignition but had not yet started the car. In any event, Lionel took the keys out of the ignition and held them behind the passenger seat so Dean could not reach them. Dean stuck his head and upper body into the car. Lionel testified that Dean "head butted" him on the side of his head. As Lionel tried to push Dean out of the car, Dean tried biting him on the forearm. Dean then struck Lionel twice in the mouth with the palm of his hand Lionel testified that he was afraid of Dean because he thought Dean was "going to beat [him] up." Lionel testified that Dean had fits of rage in the past and he constantly yelled at Lionel.
 {¶ 5} Dean denies purposely "head butting" or attempting to bite Lionel, but admits he struck Lionel twice. Dean testified that he did not want Lionel to leave because the car he was driving belonged to Dean. Dean contends that Lionel stated that he would "kick [Dean's] fucking ass" and that Dean struck Lionel with an open hand as an act of discipline. Dean testified that if he was trying to hurt Lionel, he would have used his fist. Lionel admits telling Dean he "was gonna whoop him." Two witnesses to the incident, Clyde Thompson and Cody Moss, testified that they observed Dean strike Lionel once with his open hand but did not see him "head butt" or attempt to bite Lionel. Thompson and Moss both acknowledged that Lionel said he was going to whip or kick Dean's "ass."
 {¶ 6} Following this incident, Lionel moved out of his father's home and in with his grandparents. Birkhimer testified that she contacted the Pike County Sheriff's Office after the altercation between Lionel and Dean. The Sheriff's Office informed Birkhimer that Lionel would have to press charges since Birkhimer did not observe the incident. According to Birkhimer, Lionel was too frightened to file a report.
 {¶ 7} Birkhimer testified that she tried unsuccessfully to mediate between Lionel and Dean in the months following the altercation. In September 2002, Birkhimer filed a Petition for a Domestic Violence Civil Protection Order ("CPO") on behalf of herself and Lionel. The court granted an ex parte CPO immediately.
 {¶ 8} Birkhimer testified that she filed for a CPO, even though she "was scared to death" to do so, because Dean made several threats toward her and her father, including threatening to kill them. Dean denied telling Birkhimer he was going to kill her, but admitted telling Judge Bevens he was "gonna get" Birkhimer and her father. Dean contends he merely told Birkhimer he would hold her responsible if anything happened to Lionel; however, he admits he "throw[s] some threats out there" when he becomes angry. Sherry Davis, Lionel's guardian ad litem, testified that Dean told her if he had to kill somebody, he would.
 {¶ 9} Following a hearing, the court granted Birkhimer's request for a CPO. The court found that Dean committed an act of domestic violence and ordered Dean to stay away from Lionel and Birkhimer for a period of five years from the hearing date. Dean timely appealed the entry of the CPO, assigning the following errors: I. The decision and judgment of the trial court is against the manifest weight of the evidence. II. The trial court abused its discretion by imposing the domestic violence civil protection order for the full five year period. III. In reaching its decision the trial court improperly considered evidence not relevant to the issues before the court to the appellant's detriment and prejudice.
 {¶ 10} In his first assignment of error, Dean argues that the court's decision to grant the CPO is against the manifest weight of the evidence. Dean contends that the altercation in July 2002 was an isolated incident and that Dean did not commit any act of domestic violence.
 {¶ 11} When an appellant challenges the granting of a CPO, we must determine whether competent, credible evidence supports the trial court's finding that the petitioner "has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence."Walters v. Walters, 150 Ohio App.3d 287, 2002-Ohio-6455,780 N.E.2d 1032, citing Gooderham v. Patterson (Nov. 9, 1999), Gallia App. No. 99CA01 and Felton v. Felton, 79 Ohio St.3d 34,1997-Ohio-302, 679 N.E.2d 672, paragraph two of the syllabus. This standard applies because R.C. 3113.31(D) provides that the court should "proceed as in a normal civil action" in determining whether to grant a CPO. Felton at 42, citing Walden v. State
(1989), 47 Ohio St.3d 47, 53, 547 N.E.2d 962. Under this highly deferential standard of review, we do not decide whether we would have come to the same conclusion as the trial court. Rather, we are required to uphold the judgment so long as the record, as a whole, contains some evidence from which the trier of fact could have reached its ultimate factual conclusions. We are guided by the presumption that the trial court's factual findings are correct because of the knowledge that the trial judge "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal. Co. v.Cleveland (1984), 10 Ohio St.3d 77, 79, 461 N.E.2d 1273.
 {¶ 12} A person seeking a civil protection order must prove domestic violence or the threat of domestic violence by a preponderance of the evidence. Felton at paragraph two of the syllabus. R.C. 3113.31(A)(1) defines "domestic violence," in relevant part, as "* * * the occurrence of one or more of the following acts against a family or household member: (a) Attempting to cause or recklessly causing bodily injury; (b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section2903.211 or 2911.211 of the Revised Code[.]"
 {¶ 13} "Family or household members" include former spouses and children who reside with or had resided with the respondent. R.C. 3113.31(A)(3)(a)(i) and (ii). Birkhimer meets the statutory definition of "family or household member" because she was married to Dean and resided with him during their marriage. Lionel meets the definition because he is Dean's son and resided with him at the time of the incident.
 {¶ 14} In granting the CPO, the trial court rejected Dean's contention that he was merely disciplining Lionel when he struck him. The court noted that Lionel threatened his father ten minutes before the physical encounter occurred and that Lionel was attempting to escape from Dean using his normal mode of transportation when Dean struck him. The court found that Dean's behavior was inappropriate and threatening, and that his threatening behavior continued after the incident. The court determined that Dean threatened to kill someone and threatened Lionel's grandparents with bodily harm. For these reasons, the court granted the CPO for the maximum period allowed by law.
 {¶ 15} After reviewing the record, we conclude that there is some competent, credible evidence to support the trial court's grant of a CPO. Dean admits striking his son two times and, although he denies that he attempted to cause bodily injury, the court was free to reject his claim. Lionel testified that he had two cuts inside his lip where Dean hit him and that he was in pain. Lionel also testified that he was afraid of Dean and he thought Dean was "going to beat [him] up."
 {¶ 16} Birkhimer testified that Dean threatened to kill her and her father. Dean denied making threats to Birkhimer directly, but admitted telling Judge Bevens he was "gonna get" Birkhimer and her father. The guardian ad litem also testified that Dean said he would kill somebody if it became necessary.
 {¶ 17} We conclude that there is some competent, credible evidence that Lionel was a victim of domestic violence and that Birkhimer was in danger of domestic violence. Therefore, the court's decision to grant a CPO was not against the manifest weight of the evidence and Dean's first assignment of error is meritless.
 {¶ 18} In his second assignment of error, Dean argues that the trial court abused its discretion by imposing the CPO for the full five year period. Dean contends that the trial court should have imposed a shorter CPO because the underlying incident was isolated. We disagree.
 {¶ 19} R.C. 3113.31(E)(3)(a) provides that all civil protection orders are valid until the date certain specified in the order, and that date cannot be more than five years from the date of issuance. When a party challenges the scope of a CPO, we review the order for an abuse of discretion. Walters at 290, citing Reynolds v. White (Sept. 23, 1999), Cuyahoga App. No. 74506. "Because R.C. 3113.31 expressly authorizes the courts to craft protection orders that are tailored to the particular circumstances, it follows that the trial court has discretion in establishing the scope of a protection order." Id. An abuse of discretion consists of more than an error of judgment; it connotes an attitude on the part of the trial court that is unreasonable, unconscionable or arbitrary. State v. Lessin,67 Ohio St.3d 487, 1993-Ohio-52, 620 N.E.2d 72; Rock v. Cabral
(1993), 67 Ohio St.3d 108, 616 N.E.2d 218. When applying the abuse of discretion standard, we may not substitute our judgment for that of the trial court. Berk v. Matthews (1990),53 Ohio St.3d 161, 169, 559 N.E.2d 1301.
 {¶ 20} In addition to concluding that Dean's behavior toward his son in July 2002 was inappropriate, the court expressed serious concerns about Dean's behavior after that incident. The court found that Dean made threatening statements, and that he made these threats to several individuals. The court noted that "[t]his is a case that cries out for a Civil Protection Order. * * * [Threatening people is] a very serious crime. It should not be taken lightly, and this court does not do so."
 {¶ 21} While we might have found that a shorter term of civil protection may have been sufficient, our role does not allow us to second guess or merely impose our judgment over the trial court. Given the court's findings that Dean's "course of behavior continues to be threatening," that Dean contacted Judge Bevins in connection with the situation and that Dean indicated he was capable of killing someone, we cannot say that the court's decision to grant Birkhimer a five year CPO is unreasonable, unconscionable, or arbitrary. The trial court did not abuse its discretion and Dean's second assignment of error is overruled.
 {¶ 22} In his third assignment of error, Dean argues that the court improperly considered threats he allegedly made after the domestic incident in July 2002, in granting the CPO. Again, we disagree.
 {¶ 23} Generally, all relevant evidence is admissible. Evid.R. 402. Evidence that a respondent has threatened to harm or kill a petitioner is clearly relevant to demonstrate that a petitioner or her family members are in future danger of domestic violence and that a CPO is appropriate. The fact that a respondent makes continuing threats after an initial incident clearly is relevant to the fear of future harm. Therefore, the court did not err in considering this evidence. Dean's third assignment of error is overruled.
 {¶ 24} Having overruled all of Dean's assigned errors, we affirm the judgment of the trial court.
Judgment Affirmed.
Judgment Entry
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Abele, J.: Concur in Judgment and Opinion.