DECISION AND JUDGMENT ENTRY
{¶ 1} Stephen W. Ross ("Appellant") appeals[1] from an order of protection issued by the Ross County Court of Common Pleas which directed the Appellant not to abuse his minor child, Appellee Morgan Ross, to stay 100 yards away from the child, and to refrain from initiating any contact with the child for a period of five years. In connection with this order, the trial court also found that it would not be in the child's best interest for Appellant to continue to have parenting time with the child. The Appellant contends that the trial court's judgment should be reversed because (1) it is against the sufficiency and the manifest weight of the evidence; (2) it was plain error for the trial court to admit the hearsay statements of the child into evidence; and (3) the trial court erred to the prejudice of the Appellant by admitting and considering evidence that he had refused a polygraph test. Because we find that the trial court's judgment was supported by some competent credible evidence and there exists no plain error, we affirm the judgment of the trial court.
 I. Facts {¶ 2} Appellant, Stephen Ross, and Appellee, Kelly Ross, were married on September 6, 1997, and had one child, Appellee herein Morgan Ross, on December 30, 1999. Appellant and Appellee subsequently divorced on August 15, 2001, at which time Appellee Kelly Ross was awarded custody of the child and Appellant was granted standard companionship time.
 {¶ 3} On May 7, 2003, Appellee Kelly Ross requested that the court grant a protection order on behalf of her child, Appellee Morgan Ross, based upon evidence of sexual abuse of the child. After an ex parte order was granted, Appellant filed, among other motions, a motion for contempt and a motion to modify the allocation of parental rights and responsibilities, alleging that Appellee had interfered with his companionship time, that the allegations of sexual abuse were false and requesting that all parties, both step-parents and the child undergo psychological evaluations.
 {¶ 4} On June 17, 2003, Appellee, Kelly Ross, filed a motion to suspend parenting time based upon ongoing investigations of sexual abuse, as well as the child's alleged fear of visiting Appellee and the likely harm to the child resulting therefrom. Both matters involving the civil protection order and the motions dealing with parenting time were tried together, with a total of eight hearings being held over a period of eight months and including approximately thirty-five witnesses. The child, age three and one-half at the time the hearings began, did not testify during any of the hearings.
 {¶ 5} Much testimony was provided throughout the course of the hearings, estimated by the court reporter to have resulted in approximately 1,400 pages of transcript. However, in its findings of facts and conclusions of law, the trial court focused on testimony from four individuals, which included the child's mother (Appellee Kelly Ross), the child's grandmother (Alice Congrove), the child's babysitter (Amanda Barker) and the child's Children's Services social worker/investigator (Teresa Reeves). The testimony these individuals provided included statements made by the child to them, which the trial court ultimately decided indicated that not only had the child been sexually abused, but that Appellant was the perpetrator of the abuse.
 {¶ 6} Specifically, the trial court made the following findings of fact and conclusions of law:
"5) On April 24th, 2003 Morgan was at the home of her maternal grandmother at 24 Lynette Drive, Kingston, Ohio. Morgan, who was a little over three at the time was reading a picture book in her living room. She had her legs spread open and she was looking at the picture book. She looked at her grandmother and said, "Grammy you eat me down there" and pointed to her crotch area. The grandmother responded, "what Morgan" and the child again responded, "Grammy you eat me down there". (sic) Morgan's grandmother responded, "no Morgan" and walked away.
6) On the Monday morning after April 27th Morgan was standing in the hallway of her mother's door of her mother's bathroom while plaintiff was cooking breakfast and said, "Mommy, it's okay if I go back to my `nother daddy. He won't touch me down there anymore.' `Nother daddy' was frequently used by Morgan to refer to her father Stephen Ross.
7) Morgan sat down with her mother and stated that when at her paternal grandmother's house, paternal grandmother Mary Lou Ross, in Laurelville that her `nother daddy' would ask her to play toys with her and that he would eat her down there.
8) Amanda Barker, Morgan's babysitter at the time testified that on April 29th, 2003 Morgan had walked up to her, had her `nighty' pulled up and said, `Mandy look, and showed her babysitter her panties". (sic) Morgan made acted (sic) confused stating, `I'm not a bad girl. Am I a bad girl?" She also mumbled a lot and would get upset and would run off to play. On that day or the next day Morgan came to Amanda and told her that her other daddy had touched her there and she pointed to her panties once more and said that her other daddy had touched her there.
9) Theresa Reeves of Ross County Children's Services had contact with Morgan sometime after Morgan's May 2nd, 2003 visit to Children's Hospital. During their discussions with Morgan, Ms. Reeves testified about a drawing of an anatomically correct young child and Morgan pointed to the private area of the drawing which she described as a pee-pee saying that daddy Steven hurt her there. Daddy Steven is also another name she has used for the defendant."
 {¶ 7} Appellees' counsel attempted to offer other statements the child made into evidence by way of an Evid.R. 807 notice; however, the trial court stated that because there had been no competency determination with respect to the child, the statements contained in the notice would not be admissible under Evid.R. 807. Instead, the trial court relied on the above statements, which were not part of the proposed Evid.R. 807 notice, and which were entered into the record without any objection by Appellant.
 {¶ 8} The trial court ultimately granted Appellees' request for a civil protection order and suspended Appellant's parenting time until further order of the court. It is from these decisions that Appellant brings his timely appeal, assigning the following errors for our review.
 II. Assignments of Error {¶ 9} "I. THE TRIAL COURT'S JUDGMENT SHOULD BE REVERSED BECAUSE IT IS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND/OR IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 10} II. IT WAS PLAIN ERROR FOR THE TRIAL COURT TO ADMIT THE HEARSAY STATEMENTS OF THE MINOR CHILD INTO EVIDENCE.
 {¶ 11} III. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY ADMITTING AND CONSIDERING EVIDENCE THAT THE APPELLANT HAD REFUSED A POLYGRAPH TEST."
 III. Legal Analysis A. {¶ 12} In the interests of judicial economy, we address Appellant's assigned errors out of order, beginning with the second assignment of error. In his second assignment of error, Appellant asserts that it was plain error for the trial court to admit the hearsay statements of the minor child into evidence. In support of his assertion, Appellant argues that the trial court based its decision to terminate his parenting time and grant the civil protection order on four hearsay statements made by the child and entered into evidence through the child's mother, Appellee Kelly Ross (nka Wiley), as well as the child's grandmother, babysitter and a social worker at Children's Services. Appellant's counsel concedes that he failed to object to this testimony during the July 15, 2003 hearing, but states that he was under the impression that the trial court intended to "relax" the rules of evidence at that particular hearing. Appellees counter Appellant's assertion by arguing that it was Appellant's obligation to bring perceived errors to the court's attention in order that they be corrected. Further, Appellee Kelly Ross argues that because Appellant asked her to describe the child's behavior, as well as the child's statements on cross examination, such conduct constituted invited error on Appellant's part.
 {¶ 13} It is well-settled that a party must object to an adverse ruling in order to preserve the issue for appeal. See, e.g., State v. Jones (2001), 91 Ohio St.3d 335, 343,2001-Ohio-57, 744 N.E.2d 1163; State v. Robb (2000),88 Ohio St.3d 59, 75, 2000-Ohio-275, 723 N.E.2d 1019; State v. Lindsey
(2000), 87 Ohio St.3d 479, 482, 2000-Ohio-465, 721 N.E.2d 995. Consequently, because Appellant failed to object to the testimony during the hearing, we must determine whether the trial court committed plain error in allowing the testimony. Plain error is reversible error to which no objection was lodged at trial; it is obvious and prejudicial, and if permitted it would have a material adverse effect on the character and public confidence in judicial proceedings. State v. Craft (1977), 52 Ohio App.2d 1,7, 367 N.E.2d 1221. See, also, Crim.R. 52(B). Notice of plain error is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, paragraph three of the syllabus.
 {¶ 14} An alleged error "does not constitute a plain error * * * unless, but for the error, the outcome of the trial clearly would have been otherwise." Id. at paragraph two of the syllabus; see, also, State v. Jones, supra; State v. Stojetz (1999),84 Ohio St.3d 452, 455, 1999-Ohio-464, 705 N.E.2d 329. We conduct our review with these principles in mind.
 {¶ 15} Appellant claims that the statements at issue were not admissible as an Evid.R. 807 exception because Appellees did not comply with the requirements of that rule. Appellant cites Statev. Said (1994), 71 Ohio St.3d 473, 1994-Ohio-402,644 N.E.2d 337, in support of this assertion. In Said, the Supreme Court of Ohio held that "a trial court must find that a declarant under the age of ten was competent at the time she made the statement in order to admit that statement under Evid.R. 807."[2] A review of the record reveals that an extensive discussion between court and counsel was held on the record regarding the contents of Appellees' proposed Evid.R. 807 notice and contents thereof. The trial court noted that because there had been no competency determination with respect to the child pursuant to Evid.R. 601, the statements contained in the Evid.R. 807 notice were inadmissible. The trial court specifically cited Said in support of its reasoning.
 {¶ 16} After reviewing the record, which includes the proposed, but not admitted, Evid.R. 807 notice, as well as the testimony provided at the numerous hearings, we find that the statements relied upon by the trial court in its entry are not the statements contained in the Evid.R. 807 notice. Therefore,Said's reasoning requiring a competency determination prior to the admission of a hearsay statement under Evid.R. 807 is inapplicable to the facts presently before us. Thus, we cannot conclude that the trial court's failure to determine the child's competency was plain error, as the statements introduced were not admitted under that exception to the hearsay rule.
 {¶ 17} Appellant further argues that the statements would not have been admissible under the Evid.R. 804 exceptions, "Hearsay exceptions; declarant unavailable," because the child was available, nor would they have been admissible under Evid.R. 803(2)[3] as an excited utterance because there was no time frame introduced and because there was no evidence introduced of a startling event or condition. However, we do not even reach these arguments in light of Appellant's failure to lodge objections to the admission of the statements at the hearing. If Appellant had entered objections to these statements at the hearing, Appellees could have introduced additional foundational testimony regarding time frame and the condition of the child, thus allowing the trial court its rightful opportunity to admit or exclude the testimony based upon that additional information. As Appellees correctly cite in their briefs, "[t]he plain error doctrine should never be applied to reverse a civil judgment simply because a reviewing court disagrees with the result obtained in the trial court, or to allow litigation of issues which could easily have been raised and determined in the initial trial." Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 122,676 N.E.2d 1099.
 {¶ 18} Further, a review of the record reveals that Appellant's counsel entered several objections to other attempted testimony. As a result, we are not persuaded by Appellant's counsel's argument that he was operating under the assumption that the rules of evidence were being temporarily relaxed at the July 15, 2003 hearing. Conversely, we are persuaded by Appellees' argument that Appellant invited any error associated with the admission of the child's statements through Appellee Kelly Ross, the child's mother. During the July 15, 2003, hearing, the following testimony was elicited by Appellant's counsel when cross-examining Ms. Ross:
"Q: As I understand your pleadings, at some point, she — Morgan began making inappropriate sexual remarks; is that right?
A: Yes.
* * *
Q: And what happened?
A: Well, I was not there so am I allowed to say whathappened?
Q: Yes.
A: My mother said that Morgan, who was a little over three at the time, was reading a picture book in her living room and Morgan had her legs spread open and she was looking at the picture book and she looked up at her — my mother, who she calls Grammy, and she said, `Grammy, you eat me down there," and she pointed to her crotch area. My mother said, `What, Morgan?" she said, `Grammy, you eat me down there.' My mother said, `No, Morgan.' Morgan, at that time, got up and walked away." (Emphasis added).
 {¶ 19} As this damaging elicitation of information was entered into the record on cross-examination by Appellant's own counsel, we find the reasoning of Knight v. Knight (Sept. 29, 1999), Meigs App. No. 99CA2, 1999 WL 809775 to be applicable.Knight states, in pertinent part, that "[u]nder the invited-error doctrine, a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." Citing State ex rel. Bitter v. Missig,72 Ohio St.3d 249, 254, 1995-Ohio-147, 648 N.E.2d 1355, citingState ex rel. Fowler v. Smith (1994), 68 Ohio St.3d 357, 359,1994-Ohio-302, 626 N.E.2d 950. Accordingly, we conclude that any error associated with the admission of the statements relied upon by the trial court in arriving at its decision was waived as a result of Appellant's failure to object to the admission of the testimony during the hearing. Further, any error associated with the trial court's admission of Appellee Kelly Ross' testimony on cross-examination concerning the child's statements to her grandmother was clearly invited error and as such does not rise to the level of plain error. Accordingly, we conclude that Appellant's second assignment of error is without merit.
 B. {¶ 20} We next address Appellant's first assignment of error, which asserts that the trial court's judgment should be reversed because it is not supported by sufficient evidence and/or it is against the manifest weight of the evidence. In the present case, not only did not the trial court determine that it would not be in the child's best interest for Appellant to continue to have parenting time, it issued an order of protection for five years. Accordingly, we must determine whether the trial court's decision as to both orders was in error.
 {¶ 21} When an appellant challenges the granting of a civil protection order, hereinafter "CPO", we must determine whether competent, credible evidence supports the trial court's finding that the petitioner "has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence." Birkhimer v. Dean, Pike App. No. 03CA720, 2004-Ohio-2996; Citing Walters v. Walters,150 Ohio App.3d 287, 2002-Ohio-6455, 780 N.E.2d 1032, citingGooderham v. Patterson (Nov. 9, 1999), Gallia App. No. 99CA01,1999 WL 1034472 and Felton v. Felton, 79 Ohio St.3d 34,1997-Ohio-302, 672, 679 N.E.2d 672, paragraph two of the syllabus. This standard applies because R.C. 3113.31(D)(3) provides that the court should "proceed as in a normal civil action" in determining whether to grant a CPO. Felton at 42, citing Walden v. State (1989), 47 Ohio St.3d 47, 53,547 N.E.2d 962. Under this highly deferential standard of review, we do not decide whether we would have come to the same conclusion as the trial court. Rather, we are required to uphold the judgment so long as the record, as a whole, contains some evidence from which the trier of fact could have reached its ultimate factual conclusions. We are guided by the presumption that the trial court's factual findings are correct because of the knowledge that the trial judge "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Birkhimer, supra, citing Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 79, 461 N.E.2d 1273.
 {¶ 22} A person seeking a civil protection order must prove domestic violence or the threat of domestic violence by a preponderance of the evidence. Felton at paragraph two of the syllabus. R.C. 3113.31 (A)(1) defines "domestic violence," in relevant part, as "* * * the occurrence of one or more of the following acts against a family or household member: * * * (c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031
of the Revised Code."
 {¶ 23} R.C. 2151.031 provides, in pertinent part:
"As used in this chapter, an `abused child' includes any child who: (A) Is the victim of "sexual activity" as defined under Chapter 2907. of the Revised Code, where such activity would constitute an offense under that chapter, except that the court need not find that any person has been convicted of the offense in order to find that the child is an abused child."
 {¶ 24} "Family or household members" include children who reside with or have resided with Appellant. R.C. 3113.31
(A)(3)(a)(ii). The child meets the definition of family or household member because she is Appellant's daughter and although the child's mother was the residential parent, the child had resided with Appellant in the past.
 {¶ 25} In granting the CPO, the trial court rejected Appellant's denial of wrongdoing and instead relied upon the testimony of the child's mother, grandmother, babysitter and social worker, which was admitted into the record without objection regarding statements the child made to them indicating she had been sexually abused and naming Appellant as the perpetrator of the abuse. Because we have already decided that Appellant's failure to object to this testimony does not rise to the level of plain error, and, in fact, was invited error with regard to the mother's testimony, we conclude that there is some evidence to support the trial court's grant of a CPO. Because we conclude that there is some evidence that the child was a victim of domestic violence, we cannot conclude that the trial court's decision to grant a CPO was against the manifest weight of the evidence, as Appellant urges. Based on the same reasoning, nor can we conclude that the trial court's decision to terminate Appellant's parenting time was against the manifest weight of the evidence.
 {¶ 26} We also find it necessary to briefly address Appellant's contention that the trial court erred in failing to determine the competency of the child prior to admitting statements made by her through various other witnesses. Appellant argues that the child was not a competent witness and that the court explicitly stated that it could not determine the child's competency. Appellant specifically argues that the application of a potential hearsay exception does not alleviate the need for a trial court to determine a child's competency, citing State v.Said, supra, in support. A review of the record reveals that such a discussion did place on the record; however, it was in the context of admitting certain statements contained in Appellees' Evid.R. 807 notice. The statements the trial court ultimately relied upon in reaching its decision were statements separate and apart from those contained in the notice. As such, we find the reasoning of State v. Said to be inapplicable to the present case.
 {¶ 27} Further, the Said court specifically stated, relying on its prior reasoning in State v. Wallace (1988),37 Ohio St.3d 87, 94-95, 524 N.E.2d 466, "the circumstances involving an excited utterance make that exception sui generis with respect to requiring competency of a child declarant." See, also, Statev. Boston (1989), 46 Ohio St.3d 108, 114, 545 N.E.2d 1220. Other courts have interpreted this statement to mean that the admission of a statement under the excited utterance exception to the hearsay rule does not require that the child making the statement be determined competent. See, State v. Street (1997),122 Ohio App.3d 79, 701 N.E.2d 50 ("while State v. Said held that a child must be found competent at the time a statement is made before the statement can qualify under any hearsay exception, the court excepted excited utterances from this general rule."
 {¶ 28} In light of our reasoning under Appellant's second assignment of error, we do not reach the question of whether the statements would have satisfied the excited utterance exception to the hearsay rule as Appellant failed to object to the introduction of the statements during the hearing. As we have already noted, Appellant's timely objection may have resulted in the further exploration of the circumstances surrounding the statements, allowing the trial court to decide whether to admit or exclude the testimony. In any event, had the trial court determined that the statements would have been admissible as excited utterances, based on the reasoning of Said, there would have been no requirement that the child be determined competent. Accordingly, Appellant's first assignment of error is without merit.
 {¶ 29} We also note that this court has recognized that a trial court has a duty to voir dire a child witness to determine competency before allowing a child to testify at trial. See,State v. Wilson (Feb. 18, 2000), Adams App. No. 99CA672,2000 WL 228242 ("It is the trial judge's duty to voir dire a child under the age of ten to determine the child's competency to testify"); See, also, State v. Frazier (1991),61 Ohio St.3d 247, 574 N.E.2d 483 ("It is the duty of the trial judge to conduct a voir dire examination of a child under ten years of age to determine the child's competency to testify."). Nevertheless, we find the present case factually distinguishable from those cases because here, the child did not actually testify at trial. Rather, the child's statements were admitted through her mother, grandmother, babysitter and social worker. Thus, we find no error in the trial court's failure to determine the competency of the child witness where the child did not actually testify at trial and her statements were not admitted pursuant to the Evid.R. 807 exception to the hearsay rule. Accordingly, we find Appellant's first assignment of error is without merit.
 {¶ 30} In his third and final assignment of error, Appellant asserts that the trial court erred to his prejudice by admitting and considering evidence that he had refused a polygraph test. Appellant relies on State v. Souel (1978), 53 Ohio St.2d 123,372 N.E.2d 1318, which held that "results of a polygraphic examination are admissible in evidence in a criminal trial for purposes of corroboration or impeachment" only if certain conditions are oberved. Here, there is no question that the conditions sets forth in Souel were not met. Also, the fact that the Souel reasoning was developed in a criminal context versus a civil context, as here, is of no consequence.
 {¶ 31} A review of the record reveals that Appellant was in fact questioned, over objection, regarding whether he took or refused a polygraph test. However, our review of the record also reveals that Appellant's counsel made inquiries related to polygraph testing when questioning both Teresa Reeves, Children's Services Investigator, and Appellee Kelly Ross, which essentially inferred both Appellant's and Appellee and her husband's refusal to take a polygraph test. The following exchange took place between Appellant's counsel and Teresa Reeves:
"Q: Did you know that the Pickaway County Assistant Prosecutor and the Pickaway County Sheriff's Office has requested that the mother and stepfather take a polygraph and they have refused?
A: No, I'm not aware of that."
 {¶ 32} Further, the following exchange took place between Appellant's counsel and the child's mother:
"Q: You and your husband have been asked to take a polygraph and you have refused it also, correct?"
A: I have not been asked to take a polygraph test."
 {¶ 33} Because it appears that both parties inquired into the other's refusal to take a polygraph test, coupled with the fact that there is no indication that the trial court relied on this evidence in reaching its decision, we find that Appellant's third assignment of error is without merit. Although it appears that the trial court admitted the evidence, there is nothing in the record to suggest that it relied on that evidence in reaching its decision. Accordingly, we affirm the decision of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Harsha, J. and Abele, J.: Concurs in Judgment Only.
[1] Case Nos. 05CA2829 and 05CA2830 have been sua sponte consolidated by this Court for purposes of appeal.
[2] Evid.R. 807 provides that "an out-of-court statement made by a child who is under twelve years of age at the time of trial or hearing describing any sexual act performed by, with, or on the child * * * is not excluded as hearsay under Evid.R. 802 if" certain conditions apply.
[3] Evid.R. 803 "Hearsay exceptions; availability of declarant immaterial" defines "excited utterance" in (2) as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."